**STATE of Missouri, Respondent,**

**v.**

**Michael Henry JAEGER, Appellant.**

**No. 51010.**

Supreme Court of Missouri,

Division No. 2.

Oct. 11, 1965.

Norman H. Anderson, Atty. Gen., Brick P. Storts, III, Asst. Atty. Gen., Jefferson City, for respondent.

Thomas W. Wehrle, Clayton, for appellant.

BARRETT, Commissioner.

Robert W. Stephens, Daniel E. Grindstaff and Michael H. ("Big Mike") Jaeger, all with prior felony records, were jointly charged with robbery with a dangerous weapon. After a severance and upon an information in lieu of an indictment, a jury found the appellant Jaeger guilty of the principal offense and the court, after a stipulation by the parties as to the facts and a finding of two prior felony convictions, sentenced the appellant to imprisonment for a term of years, just how many years being one of the questions involved upon the appeal. As to the substantive crime the information appropriately charged that Stephens, Grindstaff and Jaeger "feloniously and wilfully and by means of a dangerous and deadly weapon, to-wit: a pistol, did rob, steal, take and carry away, $50.00 lawful currency of the United States, one ladies Autumn-haze mink coat, one ladies dinner ring, platinum mounting and various other items of women's jewelry, all of the total value of $2,700.00, the property of Grace Piccione, by then and there putting the said Grace Piccione in fear * * *." RSMo 1959, §§ 560.120, 560.135, V.A.M.S.; State v. Foster, Mo., 249 S.W.2d 371.

While Stephens, Grindstaff and Jaeger were jointly charged, at least four people had some active part in the actual robbery of Mrs. Piccione and at least two other people had some knowledge of the events leading up to the conspiracy to rob and afterwards were told some of the facts by one or more of the robbers. The appellant Jaeger, age 35, was living in an apartment on McPherson with Alan Braun, age 18, and Alan's girl friend, "a girl named Bobby," and their immediate concern, since "we was something like partners," was money with which to pay the next month's rent. Thomas Allen Jones, age 25, admittedly guilty of "approximately 9 or 10" burglaries, "fingered" the Piccione robbery and was the fourth participant although not jointly charged with the three other robbers. Jones, Braun and Braun's girl friend

Bobby, age 20, all testified for the state and the consequence is that aside from the testimony of the police, Mrs. Piccione and her housekeeper, the jury and the court had the unusual advantage of the full details of a robbery from its planning to its execution and exposure and finally the arrest of all participants.

In brief the circumstances were that in the summer, prior to October 2, 1963, "a fellow by the name of Tommie George" pointed out Mrs. Piccione in one of her theatres (she owned the Apollo and the Varsity on Delmar) to Jones and told him that she carried large sums of money home, usually "had about $30,000 in her house," that she was a widow and lived alone with a housekeeper at 6915 Delmar. About August first Jones, to make certain of the location of the residence, waited until Mrs. Piccione closed one of her theatres and followed her pink Continental Lincoln automobile to her home. On October 1, 1963, between 6:30 and 7:30 Jones, Alan Braun and Bobby, Stephens, Grindstaff and Jaeger assembled at their usual haunt the Driftwood Tavern on North Kingshighway just off Natural Bridge Road and Jones told them about Mrs. Piccione: "What I knew about it, where she lived and that she owned the theatres, and that she was supposed to bring money home with her, and that she was supposed to sleep on the second floor."

It is not necessary to narrate their movements in accurate detail or to describe all the circumstances of the robbery. Grindstaff, Stephens, Jaeger and Jones, after having previously "cased" the house, left the Driftwood Tavern sometime after midnight and drove to Mrs. Piccione's residence in Grindstaff's truck. "Jaeger handed Grindstaff a pistol," the pistol employed in beating and robbing Mrs. Piccione, Jones returned to the tavern, and Grinstaff, Stephens and Jaeger, all wearing gloves and Grindstaff a mask, entered the basement at 6915 Delmar and "with Grindstaff using a screwdriver prying on the door Jaeger stated that he kicked it and forced it open."

As they entered the first floor "they heard a woman-hollering on the second floor," the three of them ran up the stairs and on the way up Jaeger "tore a telephone from the wall." Jaeger saw "a little small elderly lady" (Mrs. Cook the housekeeper) in a doorway of a bedroom and after tying her feet and hands with strips of cloth from a sheet, left her on a bed-covered up with blankets. Unable to find any large sums of money, $20,000 to $30,000, "they" beat Mrs. Piccione with a screwdriver and a pistol, tied her feet and hands and blindfolded her in an effort to compel her to reveal the location of a wall safe or "where the money was." Mrs. Piccione said, "I was bandaged, sir, about three times; my legs were crossed like this, and my ankles bandaged very tight, and also my wrists; and it was so tight that, you know, the blood was throbbing. My ankles and my—I was beaten on the legs and through my body, through my chest and my ribs, and my head." (She was hospitalized for 12 days.) Finally the robbers took $15 in cash from Mrs. Piccione's pocketbook, they found and took several silver dollars, a diamond bar pin, a platinum bar pin, a diamond ring, a diamond wristwatch, a large aquamarine stone, a mink stole, a mink coat and finally left in Mrs. Piccione's pink Lincoln automobile—later found near Ramada Inn. On October 16 the police arrested Jones, "when they picked me up I didn't know what they had in their mind," and, in the language of the cross-examiner, he "confessed to the Piccione robbery." On the same date, October 16, a police officer took possession of two guns found in a drawer in the Driftwood, one identified as Jaeger's. Shortly Stephens, Grindstaff and Jaeger were arrested, Jaeger refused to sign a written statement but made a rather full oral admission to police officers and both Mrs. Piccione and Mrs. Cook identified him as one of the three robbers.

■ These detailed circumstances, needless to say, support the charge and are indeed sufficient to establish, as the jury found, Jaeger's guilt of robbery with a dangerous and deadly weapon. Some of his objections in his motion for a new trial, for example as to Instruction 1, are based upon the claim that he, Jaeger, did not personally assault Mrs. Piccione with the pistol. There is an assignment based upon the admission in evidence of the pistol, identified by Jones as the "gun that Jaeger handed to Grindstaff." But without setting forth specific testimony and demonstrating, the evidence not only shows that Jaeger took part in the actual robbery of Mrs. Piccione, it also shows that he was "conspiring and counseling in planning the crime, as well as procuring articles to be used in the preparation thereof," and so in any event he was guilty as a principal. RSMo 1959, § 556.170, V.A.M.S.; State v. Tripp, Mo., 303 S.W.2d 627. Not only was the pistol properly admissible in evidence, there was no error in charging the jury that "All persons are equally guilty who act together with a common intent in the commission of a crime," etc. State v. Churchill, Mo., 299 S.W.2d 475.

■ Instruction 4 instructed the jury in part "that any oral statement made by any defendant, even though it should contain matters that tend to prove his guilt, is admissible in evidence against the defendant and is to be given such probative value as evidence as you believe it deserves, if you find it was voluntarily given." The partially briefed objection to this instruction (there is no citation of authorities to any of the five points raised) is that "it is confusing and misleading. The instruction refers to any oral statement by any defendant, which could refer to the testimony of *Tommie* Jones, who confessed to this crime on the witness stand, but who was not a defendant in this case and who also made a statement to Major Dougherty." It may well be that this instruction should not be given, it is indeed fraught with hazards because unless the defendant was present or there are other exceptions, a confession or admission by one conspirator "is not ordinarily admissible against others participating in the crime or conspiracy

and implicated thereby." 22A C.J.S. Criminal Law § 769, p. 1156; State v. Hill, 352 Mo. 895, 179 S.W.2d 712. But whether a proper instruction or not the question here is whether for any of the reasons specifically presented it is manifestly prejudicial and therefore entitles the appellant to a new trial.

■ The appellant's own stated point may contain a sufficient answer, while Thomas Allen Jones is "still charged with this crime," he is not, in the appellant's language, "a defendant in this case." Jones testified that after his arrest he "confessed" to the police but any confession he may have made was not offered in evidence and no one testified to any admission he may have made. He did "turn state's evidence" but that can hardly be construed as either a confession or an admission in their conventional sense or as employed in the instruction. The only admission testified to as such was that of the appellant Jaeger to the police and in its essence that admission did not differ materially from Jones' testimony and so any admission by others would merely be corroborative of the one made by Jaeger. In view of all these reasons and circumstances it may not be said that Instruction 4 was manifestly prejudicial demanding the granting of a new trial. State v. McCloud, Mo., 328 S.W. 2d 586.

■ The fifth error urged in the appellant's brief is that the court erred in refusing to declare a mistrial by reason of the alleged highly prejudicial argument of the state's attorney "when he repeatedly referred to the witnesses as having lied, after the court had sustained appellant's objection to such an argument and had instructed counsel to refrain from the use of such an argument." This objection requires but brief notice because the specific objection is not in fact supported by the record. The only witnesses were those offered by the state, the appellant had no witnesses and he did not testify and so the case is not as if the state's attorney had applied denunciatory, inflammatory epithets to either the defendant or his witnesses as in State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524. The state's attorney was referring to Mrs. Cook's testimony and that of Mrs. Piccione identifying Jaeger as one of their assailants and he said to the jury, in part replying to appellant's attack on Jones, "you'd have to believe she was lying, not mistaken. * * * They identified him * * *. You'd have to believe they were lying, they'd commit perjury." Defense counsel instead of a proper objection made some comment, nevertheless the court said, "As to the use of the word 'lying' it may be stricken." Later in arguing Jaeger's admission to detectives state's counsel said "the only way that you cannot take that evidence as gospel in this case is if you believe that they lied, that they perjured themselves." The court denied a motion to discharge the jury but sustained an objection to the word "lied" and instructed the jury to disregard it. Again speaking of a chief of police and a police captain, counsel said, "Are they going to come into court just to lie?" Upon objection counsel apologized for use of the word as "spontaneous" and unintentional and withdrew the remark. The court again noted that the jury had been instructed to disregard the remark. This is not to say whether in any event the language was manifestly improper, it is sufficient to say that upon this record the court did not abuse its discretion in refusing to declare a mistrial.

Strangely enough, and unnecessarily it seems to the court, even though not without its difficulties, the serious and meritorious problem upon this appeal is the question of the fixing of the penalty, just when it was fixed, the sequence in which it should be fixed, and particularly what should be done about it at this juncture. Secondly it must be kept in mind that the appeal is concerned only with the particular case, its record and circumstances. The only authorities cited in the appellant's brief are

upon this point and they are Criminal Rules 27:09 and 27.20, V.A.M.R. Rule 27.09 has to do with allocution and provides that "When the defendant appears for judgment and sentence, he must be informed by the court of the verdict of the jury and asked whether he has any legal cause to show why judgment and sentence should not be pronounced against him; and if no such sufficient cause be shown, the court must render the proper judgment and pronounce sentence thereon." It has been said that this statute is mandatory and when the record in a case shows noncompliance with the rule "the judgment is reversed, and the cause remanded, with directions that the appellant be brought into court for allocution and judgment in accordance with the verdict." State v. Deck, Mo., 262 S.W. 712. But failure to grant allocution is not the problem here. Rule 27.20 has to do with the motion for a new trial, its contents, filing, and when considered. This rule has some forceful significance here but at this point it only need be noted that the motion must now be filed "within ten days after the return of the verdict," under the old statutes the time was four days. This statute also provides that the trial court may extend the time for filing "such motion for an additional period of thirty (30) days" and this the court did in this case. One other preliminary matter to be noted in connection with these two rules and all the Rule 27 rules is that they are rescripts of and adaptations of existing statutes, particularly chapter 546 relating to "Trials, Judgments and Executions in Criminal Cases." While each rule has its prior parallel statute not all the statutes were adapted into the rules and neither were all statutes repealed.

◼ The briefed assignment of error is this: "The trial court erred in sentencing defendant to 65 years on July 24, 1964 for the reason that the trial court had entered *judgment* for 15 years on March 4, 1965. This *judgment was final* because no order was ever entered setting aside this *judgment* and the purported *sentencing* on March 20,

1964 was of no force and effect because appellant's *motion for new trial has* (had) *not been filed or ruled on."* (Italics supplied for emphasis.) The assignment of error uses the word "judgment" without carefully noting its precise meaning and it erroneously assumes that the court's mention of 15 years was a "final judgment." In this connection it may be noted that in its technical sense a "sentence" in a criminal case is a "judgment" or a "final judgment." And until there is a "sentence" there is no final, appealable judgment and an appeal before sentence is premature demanding that the submission on appeal be set aside and the cause remanded to the end that the defendant be brought before the court for the proper pronouncement of sentence. State v. Pruitt, Mo., 169 S.W.2d 399.

◼ Jaeger admittedly had a prior felony record with the consequence that the jury found only his guilt or innocence of the principal offense and the trial judge had the duty of finding and fixing the punishment. RSMo 1959 Supp. § 556.280, V.A.M.S. And under the rules and the statutes (Rule 27.03, RSMo 1959, § 546.440, V.A.M.S.) another instance in which "the court shall assess and declare the punishment and render judgment accordingly" is when the jury agrees upon a verdict of guilty but fails to agree upon the punishment to be inflicted. But these rules and statutes do not purport to cover all circumstances attending a conviction or a verdict of guilty and of necessity they do not attempt to spell out the sequence of events, each case depends on whether there is to be another step in the proceeding. If the jury finds a verdict of guilty and fixes the punishment within proper limits (the court may reduce the punishment or disregard improper jury sentences, Rules 27.04, 27.05, 27.06), the court "shall render a judgment according to such verdict, *except as is otherwise provided in these Rules."* Criminal Rule 27.02. Thus when the jury finds a verdict of guilty and there is to be no motion for a new trial or presentence investigation or postponement for any reason of the pronouncing of sentence,

subdivision (a) of Criminal Rule 27.07 (a new rule adapted to modern procedures) would apply and "sentence shall be imposed and judgment rendered without unreasonable delay."

But this was not the sequence of events in this case. On March 4, 1964, the jury returned a verdict finding the appellant Jaeger guilty of robbery by means of a dangerous and deadly weapon. The jury was polled and following that there is an entry entitled "PUNISHMENT ASSESSED." In this entry the court inquired whether there was any lawful reason why the court "should not pronounce judgment at this time." Upon defense counsel's answering "No" the court said, "Well, under the law as I read it and understand it, I will pronounce judgment in accordance with the jury verdict on the charge on which the jury found you guilty, robbery first degree by means of a dangerous and deadly weapon, fifteen years. That will be the judgment. *This is not the sentence at this time,* however. Fifteen years. Remand you back to the Sheriff." (Emphasis supplied.) On the same day and following this record entry there is an entry entitled "PRE-SENTENCE INVESTIGATION" and the record recites that the board of probation and parole is to make a presentence investigation of the defendant Jaeger and return a copy of the report into court. On March 10, 1964, "by leave of Court," the defendant was granted 30 additional days in which to file a motion for a new trial.

The next captioned entry is on March 20, 1964, "SENTENCING OF DEFENDANT," and under this entry the court had the record show the appearance of the parties "for sentencing." Whereupon defense counsel interposed and said that he did not wish to waive any rights and he wanted the record to show that when the jury brought in its verdict "the Judge at that time entered—I don't know whether it was a judgment or assessment or a sentence—of 15 years." The court immediately said, "Oh, yes, you do. Specifically in the record it

says. * * * Don't be saying you don't know because it's in the record that *I explained at the time it was not a sentence.*" Then the court had the record again show that when the jury returned a verdict on March 4 "at which time *the Court did* after receiving the verdict *inform the defendant it was not a sentence and informed the attorney it was not a sentence, that under the law he could not be sentenced until you had an opportunity to file a motion for new trial, et cetera.*" The court then pointed to the fact that at the defendant's request extra time had been granted in which to file a motion for new trial. "Therefore," the Court said, *"at this time the defendant has come to be sentenced in conforming with the Court's direction, with his attorney."* (Italics supplied.) The court then proceeded to review the presentence report pointing out that since he was thirteen years old, the defendant had been in reformatories and prisons, in Oklahoma, California, Connecticut, Florida and Missouri, and on parole four times. After concluding his review of the presentence report the court announced, "And, therefore, I sentence you at this time to 65 years."

The next captioned entry of April 13, 1964, is the filing of "DEFENDANT'S MOTION FOR A NEW TRIAL." And on July 24, 1964, the caption is "SENTENCING." In this connection the first entry is "Motion Overruled for New Trial." Then there was a colloquy between court and counsel as to whether on March 20 (the 65 years sentence) the court had in fact "sentenced" the appellant, the court and counsel seemed to rather tentatively agree that since a motion for new trial was pending the court could not then sentence him. The court then reviewed the situation at some length, commenting that there had been a hung jury in Stephens' trial (he finally got six years on a plea of guilty) and that Grindstaff hadn't been tried and he took the matter under advisement. On July 29, 1964, the caption is "ORDERS SET ASIDE—NEW SENTENCE." The court again reviewed the matters that had gone

into his sentencing of Jaeger and the court finally reduced the sentence to 40 years. The entry recites that the sentence of 65 years "has been set aside."

And finally, on July 29, 1964, there was a "RECORD ENTRY OF JUDGMENT AND SENTENCE." This entry of final judgment (RSMo 1959, § 546.590, V.A. M.S.) recites that orders "heretofore entered on March 20, 1964 and July 24, 1964, be and are hereby set aside" and in accordance with the jury verdict of guilty of robbery by means of a deadly weapon, the motion for new trial is overruled, and according to § 556.280 (second offender statute) the court sentenced the appellant Jaeger to 40 years' imprisonment. On August 3 the appellant filed his notice of appeal and thereafter was permitted to prosecute the appeal as a poor person.

The appellant does not complain of the final judgment and sentence of 40 years (July 29, 1964) from which he necessarily appealed (State v. Pruitt, supra), "there is no final disposition of a cause until there is a final judgment, and a court does not lose jurisdiction of a case until final judgment is entered, though such be not done until a subsequent term." Ex parte Hartley, 330 Mo. 338, 342, 49 S.W.2d 119, 120. The basic thrust of the appellant's assignment of error is that whatever the court may have done upon the return of the verdict on March 4 the record recitation of 15 years was the sentence and final judgment and could not thereafter be altered. While the court's procedure was most irregular, as indicated, the "15 years" was not intended as "the sentence" and there was in fact no sentencing of the appellant on that occasion. Not only is it true as a matter of fact but as indicated, when there is a jury verdict and other procedures or matters are to follow, as here, both a motion for a new trial and presentence procedure, it is not proper to pronounce sentence before these matters have been disposed of. In fact a motion for a new trial filed after sentence is not timely and at least prior to the adoption of the Civil Code preserved nothing for review. State v. Deck, supra; State v. Nistendirk, Mo.App., 204 S.W. 1111. Under both the rule and the statute (Criminal Rule 27.20; RSMo 1959, § 547.030, V.A.M.S.) the motion for a new trial "shall be filed before judgment" and this requirement is mandatory. State v. West, Mo., 270 S.W. 279; State v. Lauridsen, Mo.App., 318 S.W.2d 511; State v. Riley, 228 Mo. 431, 128 S.W. 731. Quoting from another Missouri case the court said, "In this case the record shows affirmatively that the defendant was not given time to file his motion for new trial nor granted his allocution. The judgment then pronounced was irregular, and should be set aside." State v. Keller, 304 Mo. 63, 71, 263 S.W. 171, 173. The proper order, form, or sequence after a jury verdict in a criminal case when further and other steps are to be taken, such as a new trial, has been set forth on numerous occasions, for example see State v. West, 270 S.W. 1. c. 282. Likewise when presentence procedures are to be followed, the presentence investigation necessarily is made "before the imposition of sentence or the granting of probation." Criminal Rule 27.07(b). In short the record entry on March 4 relating to fifteen years, entered before the filing and ruling on the motion for a new trial and before the return of the ordered presentence investigation, was not in fact a sentence or judgment, certainly not a final judgment. State v. Schierhoff, 103 Mo. 47, 15 S.W. 151; State v. Keller, supra. In State v. Grant, Mo., 380 S.W.2d 799, 803, the court said, "judgment purports to have been rendered and sentence imposed on the day the verdict was returned in spite of the fact that the defendant had the legal right under S.Ct. Rule 27.20 to file a motion for new trial within ten days after the return of the verdict, which time as shown by the same record had been extended to thirty days. A judgment so rendered would be illegal and ineffective to obstruct the defendant's right to file a valid motion for new trial or to appeal from the ruling thereon and a judgment duly rendered."

The other assignment of error is that the sentence of 40 years' imprisonment is excessive. It is said in support of the argument that one of the persons charged, Jones no doubt, is on probation, that Stephens received a sentence of six years and Grindstaff has not been tried and that "all are habitual criminals." But the sentence is within the punishment prescribed by the statute: "Every person convicted of robbery in the first degree by means of a dangerous and deadly weapon shall suffer death, or be punished by imprisonment in the penitentiary for not less than five years." RSMo 1959, § 560.135, V.A.M.S. It may be that the appellant's confederates justly deserve far greater sentences, but that does not establish the claim that the appellant's sentence of forty years for the same crime is excessive or that it should be set aside. State v. Maxwell, Mo., 376 S.W.2d 170, 173–174; State v. Cooley, Mo., 221 S.W.2d 480, 485.

Questions not required to be presented in a motion for a new trial have been examined and the transcript shows compliance with all matters necessary to be considered by this court "upon the record before it." Criminal Rule 28.02; RSMo 1959, § 547.270, V.A.M.S.

And for the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

EAGER, P. J., and STORCKMAN, J., concur.

FINCH, J., concurs in result.