**STATE of Missouri, Respondent,**

v.

**Leotis REED, Jr., Appellant.**

**No. 54171.**

Supreme Court of Missouri,
Division No. 2.

March 9, 1970.

Rehearing Denied April 13, 1970.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Richard O. Funsch, St. Louis, for appellant.

BARRETT, Commissioner.

Leotis Reed, Jr., has been found guilty of robbery in the first degree by means of a dangerous and deadly weapon. He had a prior felony conviction and so the court fixed his punishment at seven years' imprisonment.

The amended information charged in part that on May 4, 1968, Marvin Wilson and Leotis Reed, Jr., "feloniously and wilfully and by means of a dangerous and deadly weapon, to wit: a knife; did rob, steal, take and carry away thirty-three dollars * * * the property of LaVert Trott(l)er by then and there putting the said LaVert Trott(l)er in fear of an immediate injury to his person * * *." The information is not challenged in either form or substance, nevertheless, it sufficiently and properly charges the offense, not alone of first degree robbery but of robbery "by means of a dangerous and deadly weapon." RSMo 1959, §§ 560.120; 560.135, V.A.M.S.; State v. Jaeger, Mo., 394 S.W.2d 347. And important here in view of Reed's claim on this appeal is the fact that he was not charged alone or as an accessory (RSMo 1959, § 556.170, V.A. M.S.), it was charged that he and Wilson by means of a deadly weapon robbed Trotter. State v. Tripp, Mo., 303 S.W.2d 627; State v. Jaeger, supra.

Further in view of the ingenious argument by Reed's diligent court-appointed counsel it is necessary to briefly note the facts as established by the state's evidence and as the jury found them. About 5:30 on the morning of May 4, 1968, LaVert Trotter, a Harris Cab Company driver, with over thirty years' experience, was cruising on Delmar and Jefferson just before ending his shift at six o'clock. On Jefferson he picked up a lady passenger at the Crown Restaurant and at the Jefferson Building he picked up two men who got in the back seat of the cab and announced their destination as either 1100 Hamilton or 1100 Hodiamont. In the area of 3161 Evans the lady passenger was discharged. In the 5700 block of Page Avenue the two male passengers in the back seat "told me to let them out." And then Trotter said, "One I left

on the curb. The one got out on the back seat. When he got out the back seat he opened one side, that door, the passenger's, and he got in. When he got in in there—he got in, put a knife on my throat, and the other guy jumped from the back onto my steering wheel." Trotter identified the appellant Reed as the man with the knife with a "five or six inch blade." Trotter said that the other man, Wilson, "didn't open his mouth to me at all" but, he said that Reed said, "I am going to kill this son-of-a-bitch. He ain't going to identify me." Wilson, in the meanwhile, reached into Trotter's pants pocket and took $33.00 belonging to Trotter. The robbers did not injure Trotter but "they took the cab, and put me out of the car, and drove away."

Trotter made his way to the cab office, 3828 Finney, and called the police "but they had already caught this man and had him in the back seat" at 5500 Cote Brilliante. This came about according to Patrolman Smith who about 5:50 in the morning of May 4th saw Harris Cab number 24 "fail to make the stop sign at Clara and Cote Brilliante" and because of that fact stopped the cab. There were two men in the cab with Reed driving and when Officer Smith asked to see Reed's driver's license "because he violated the stop sign" the other "person jumped from the cab" and ran down an alley between Clara and Bird. The officer knew and recognized the man who fled as Marvin Wilson whom he had known for more than two years.

█ Upon the trial of Reed, after a severance, from the beginning of the trial to the end the defendant objected and made the point that the court erred in admitting the evidence of Wilson's flight. It was and is contended that after a severance the flight of a coindictee was immaterial upon any issue relating to Reed and his guilt and was unfairly prejudicial to his right to a fair trial. In this connection it is said that by the time Wilson fled the crime of robbery had come to an end and was a completed offense and therefore evidence of his

flight was erroneous. In this manner it is sought to bring the case within the doctrine of State v. Weaver, 165 Mo. 1, 65 S.W. 308. In that case, in 1901, three hoboes were charged with the murder of night watch Pew at Louisiana. Upon the trial of Weaver, after a severance, the state introduced evidence that a year before the same three hoboes had been arrested in Louisiana and on that occasion and while "confined there in the calaboose," one of them, Burns, had said that "he would get even with the police of Louisiana if it took twenty years." It was also shown that while the three defendants were being held in the jail at Bowling Green the other two, Burns and Logan, escaped. It was held that because there was no evidence "to show that a conspiracy existed, *at the time* Burns made this threat" proof of the threat and escape by Burns was improper and prejudicial to Weaver. The appellant also relies on State v. Neal, Mo., 416 S.W.2d 120, in which two masked men held up a finance company office, fled in a Cadillac automobile, and then a witness "saw two or three persons get out of the car and get into another" automobile, a De Soto, and drive away. When police officers came upon the automobile at a filling station between 1 and 2 o'clock, the robbery occurred between 1 and 1:30, they arrested the appellant Neal and the De Soto "hurriedly left" but shortly was stopped by police and its three occupants were arrested. It was assumed that the common enterprise had ended but the court said, "However, as a result of the arrest of Johnson, McIntyre and Kenner, two weapons were discovered" and so it was held proper to show that one or more of the coconspirators was in possession of a weapon or instrumentality with which the crime was committed. It is not necessary here to say whether the crime of robbery was "complete" before the officer stopped the cab, in one sense insofar as taking Trotter's money from his pocket, the offense with which Reed was charged, was involved, the robbery was a completed offense. In another sense, and particularly had Reed been charged with taking, in addition to the money, Trotter's taxicab, the

offense was not complete. Also in this connection the problem arises of whether in any event, when in addition to the money they force Trotter out of his cab and drive it away and before reaching their destination are stopped, there is really a completed offense—getting away is certainly one of the final objectives of a consummated robbery.

But as indicated in connection with the information, Reed and Wilson were charged not as accessories before the fact or as conspirators, but as acting together and by means of a deadly weapon assaulting and robbing Trotter. The state's proof, despite the defendant's alibi, supports the charge in detail. The appellant and Wilson, upon the state's proof, took and employed Trotter's cab to consummate, to bring to completion, the robbery of Trotter and in that sense and view the "common enterprise" (State v. Chernick, Mo., 280 S.W.2d 56) had not ended. It is not necessary to say whether asportation is an essential element of robbery, but in refutation of appellant's contention that the robbery had come to an end by the time the police stopped the car and ran it may be said that in general robbery is a combination of assault and larceny and in that sense may involve asportation and "the appropriation of another's property at the scene of the holdup is a transaction which continues after the perpetrators depart from the place where the property was seized." People v. Wallace, 36 Cal.App.2d 1, 97 P.2d 256; People v. Raucho, 8 Cal.App.2d 655, 47 P.2d 1108, 1112; People v. Reade, 197 Cal.App.2d 509, 17 Cal.Rptr. 328. There was no instruction in this case on the subject of flight (see State v. Jaeger, supra, and State v. Brletic, Mo., 283 S.W.2d 568), there was only the indicated proof. The evidence as a whole, however, justified the cautionary first paragraph of the main instruction which told the jury that "all persons are equally guilty, who act together with a common intent in the commission of a crime," and a crime committed by two or more persons acting jointly is the act of all and of each one so acting. State v. Garton, Mo., 371 S.W.2d 283, 288–289; State v. Harris, Mo., 351 S.W.2d 713, 717. And, as indicated, the court did not prejudicially err in permitting Officer Smith's testimony that Wilson ran from the automobile as Reed was detained and arrested.

■ In addition to its introductory paragraph Instruction 2 was the principal instruction and in conventional language hypothesized the facts constituting robbery and defined the words "feloniously," "wilfully" and "robbery." If the jury found the hypothesized facts, of course, they were to find Reed guilty and if they did not so find they were to acquit him. The other point briefed and argued now is that the court erred in giving the jury Instruction No. 2 for the reason that it is not a brief and concise statement of the facts in accordance with Civil Rule 70.01, V.A.M.R. and the promulgated MAI instructions. In response it may only be said that a committee of distinguished members of the Missouri Bar is in the process of drafting "pattern criminal instructions" but their work has not been completed, there are no pattern criminal instructions and the pattern instructions of MAI are applicable only to civil cases and so Instruction 2 was not erroneous for any reason urged here.

Accordingly, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.