STATE of Missouri,
Plaintiff-Respondent,

v.

James Edward HODGE,
Defendant-Appellant.

No. 13154.

Missouri Court of Appeals,
Southern District,
Division Two.

June 30, 1983.

Motions for Rehearing Overruled and to Transfer to Supreme Court Denied July 20, 1983.

Application to Transfer Denied Sept. 20, 1983.

**740**

John D. Ashcroft, Atty. Gen., George W. Cox, III, Bruce Farmer, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

William H. Wendt, Scott B. Tinsley, Springfield, for defendant-appellant.

PREWITT, Judge.

Defendant appeals, following his conviction in a jury-waived trial, of assault in the first degree. § 565.050, RSMo 1978. He was sentenced to life imprisonment. Defendant was charged with attempting to kill or to cause serious physical injury to Karlene Hodge, his ex-wife, by shooting at her with a shotgun and striking her in the head with a blunt instrument. The state contended that defendant hired Kenneth McCurdy to commit the assault on her.

Defendant contends that McCurdy's "suicide note" which implicated him in the assault was erroneously admitted in evidence and that without it the evidence was insufficient to support the conviction; that evidence of a prior assault by him upon his ex-wife should not have been admitted as it constituted evidence of an unrelated crime; and that the trial court erroneously admitted evidence of his statements and conduct toward her occurring from approximately April of 1980 to several months before the assault charged because it was too remote.

Defendant and Karlene Hodge were married in August 1958 and divorced in April 1980. Three children were born of their marriage. Prior to the divorce they lived on a farm about one mile from Cassville. After the divorce the farm was sold. There was evidence that defendant did not wish to sell the farm but said he had to because of the divorce and that he complained that the divorce cost him more than it should.

On the morning of October 7, 1981, Karlene Hodge and her daughter lived in a mobile home at Route 1, Monett. Karlene Hodge left her home a little after 7:00 o'clock a.m. to go to work at a sewing factory in Monett, Missouri. At approximately 7:20 a.m. that morning a Barry County deputy received a phone call from the Monett, Missouri police dispatcher. The deputy then went to a location approximately one mile southeast of Monett where he found Karlene Hodge lying near some railroad tracks about ten feet from a road. She was approximately one hundred feet from her car. The windshield of her car appeared to have been hit by pellets from a 12-gauge shotgun and the door glass on the driver's side had been shattered. She was taken by ambulance to a hospital. There she was determined to be in critical condition from a skull fracture consistent with a blow from a blunt object such as the stock of a shotgun. As a result of the injury, she has extensive permanent brain damage. It

was stipulated that at the time of Karlene Hodge's injury defendant was at his place of employment in Cassville, which is approximately fifteen miles from Monett.

On March 21, 1981, defendant struck Karlene Hodge several times in the presence of her daughter. He told his oldest son he would have killed her had it not been for the presence of the daughter and that he wanted to kill her but had not had the opportunity. Defendant's youngest son testified that defendant was upset because Karlene Hodge was dating other men and told him that he would kill her and be able to get away with it. He told their daughter that he would kill Karlene Hodge if the two of them did not get back together; that if he could not have her, no one could, and that he would kill her or hire someone who would.

There was evidence that in the late spring or early summer of 1981 on two occasions defendant offered two other people money to have Karlene Hodge beaten and scarred. He said he wanted her face scarred so that no other man would look at her. He also asked them to make harassing phone calls to her. A woman who defendant dated from April 1981 until August 1981 said defendant talked constantly about Karlene Hodge and threatened to kill her or have her beaten up. He told her it would be easy to shoot Karlene Hodge while she was driving. In July of 1981 while Karlene Hodge was driving home, defendant attempted to run her car off the road and then verbally abused her. Also, that summer he threatened a man she was dating. Subsequent to that, Kenneth McCurdy, an acquaintance of defendant, confronted the man and pointed a pistol at him in a deserted parking lot.

A witness testified that he saw defendant three times during the summer of 1981. He stated the first time that defendant and Kenneth McCurdy came to his home in Bentonville, Arkansas and defendant asked him about beating up a man in Missouri who was dating his ex-wife. At a second meeting the witness said that defendant offered him $500 to beat up Karlene Hodge and "leave her for dead". At the third meeting defendant inquired if the witness had considered his offer and when the witness declined, he asked the witness where he could find Kenneth McCurdy.

Donna Garris testified that in the latter part of September 1981 she and defendant took a trip to Arkansas to look for Kenneth McCurdy. Defendant had said McCurdy owed him $2000. They did not find McCurdy, but she learned that he drove a white pickup truck. Garris stated that defendant lent her $500 and later, while they were outdoors and he was firing a shotgun, he said that she would not have to repay it if she would kill Karlene Hodge. She testified that he told her he had a plan to shoot Karlene Hodge as she went across the railroad tracks at approximately 7:15 in the morning, on her way to work. He said there was a "big brushy embankment" on each side of the road; that she has to stop for the tracks and could be shot from there. Garris testified that defendant said he had watched Karlene Hodge as she drove across the tracks. Garris also called Kansas City at defendant's request to locate a "hit man" and she and defendant also looked locally for a "hit man".

Two days before the assault, defendant told Garris that he had located someone who would do the job for $2700, $700 cash and cancellation of a $2000 loan. He said it was a man who had stayed at his trailer the night before. The man drove a white pickup. On October 6, 1981, defendant and Garris spent the night together. He woke her at approximately 3:00 a.m. the next morning and told her that he had to go home and get ready to go to work. He said, "if I don't see you for a few days, don't be alarmed. It's going to happen. My man got tangled up in the brush this morning, or it would have happened this morning." He then told her to keep her mouth shut. On October 9, 1981, she said defendant was upset on how the assault was done. He said it was "a sloppy job" and should have been done better. He again told her to keep her mouth shut and

also told her not to say anything about the white pickup.

On October 26, 1981, the Barry County sheriff questioned Kenneth McCurdy about the assault. McCurdy denied any involvement. The next day McCurdy committed suicide. His wife had left the house that morning at approximately 6:00 o'clock and returned about 7:15 p.m. He left notes at the house for his wife and a note directed to the Barry County sheriff, stating:

"Look no further for a man it was I. James Hodge was guilty of the hiring. I hope this helps put him away. Kenneth McCurdy"

Defendant called two witnesses who testified that Donna Garris had a bad reputation for truthfulness. He presented five witnesses who testified that he had a good reputation for honesty and truthfulness. Defendant also testified at trial. He stated that Karlene Hodge's drinking and running around and his having to sell the farm all upset him at the time of the divorce. He stated that the reason he struck her on March 21, 1981, was because she was drunk and cursing him. He said that in an effort to sober her up he got her into the fresh air and slapped her four or five times about the face. He stated that the reason he went to Arkansas with Donna Garris was to trade his car for a pickup and camper. He denied having made any statements about having Karlene Hodge hurt or killed and denied any involvement in the assault on her.

Defendant's first point asserts that the trial court erred in admitting the note McCurdy left to the Barry County sheriff into evidence as it is hearsay and does not come within any of the exceptions to the hearsay rule. The state contends that the note was properly admitted because it was a declaration against penal interest and bore substantial indicia of reliability in that it exposed the declarant to criminal liability, and that the circumstances of its making proved that none of the hearsay danger was present. The state further contends that the note was as reliable as other analogous exceptions to the hearsay rule because it bore the same assurance of trustworthiness as a dying declaration or a declaration against interest.

The state does not contend that the note comes within any recognized exception to the hearsay rule applicable to criminal proceedings and it appears clear to us that it is not. It is not admissible as the statement of a coconspirator as it was obviously not made in the furtherance of the object of an unlawful combination. See State v. McCollum, 598 S.W.2d 198, 200 (Mo.App.1980). Although it might be considered, at least in part, a statement against the penal interest of Kenneth McCurdy, generally in Missouri declarations against penal interests are not admissible in criminal proceedings. State v. Turner, 623 S.W.2d 4, 8 (Mo. banc 1981), cert. denied 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). The statement would not be admissible as a dying declaration as they are received only in cases of homicide where the death of the deceased is the subject of the charge. State v. Jefferson, 77 Mo. 136, 139 (1882); 5 Wigmore, Evidence, § 1433, p. 281 (Chadbourn rev. 1974).

A confession by one conspirator is not ordinarily admissible against others participating in the crime and implicated by the confession. State v. Jaeger, 394 S.W.2d 347, 350–351 (Mo.1965). See also Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Neither are such confessions admissible because they are made in anticipation of death or when the declarant is deceased at the time of trial. Holt v. United States, 94 F.2d 90, 93–94 (10th Cir.1937); Annot. 4 A.L.R.3d 671, 706 (1965). This rule has been applied to a suicide note implicating a defendant and such a note has been held not admissible under any exception to the hearsay rule applicable here. Commonwealth v. Antonini, 165 Pa.Super. 501, 69 A.2d 436 (1949). See also United States v. Lemonakis, 485 F.2d 941 (D.C. 1973); United States v. DeCarlo, 458 F.2d 358 (3d Cir.1972).

In a dying declaration it is unlikely that one contemplating death would accuse a party who did not harm him and let the

guilty party go unpunished. Declarations against penal interest, when admissible, have an indicia of reliability because the declarer is exposed to criminal punishment. A person contemplating suicide, and leaving a note to be found after his death, would not be in fear of legal punishment. The writer of a suicide note might have a motive to implicate another other than the truth. He might be vindictive for reasons unrelated to the statements in the note. A declarant who has decided to commit suicide would have no fear, perhaps other than religious convictions which may or may not be present, of punishment for the criminal act asserted or for the falsity of the note.

■ Although under the circumstances here present the note does contain indicia of reliability, that indicia primarily comes not from the circumstances in which the note was made, but from the substantial other evidence that indicates that defendant did hire someone to assault Karlene Hodge. To allow hearsay because other evidence indicates it is correct could emasculate the hearsay rule and expand the dangers that it was designed to prevent. We believe that whether hearsay should be admitted has to depend on the circumstances directly associated with it and not whether it is fortified by other evidence. Allowing one person to implicate another in a crime when the declarant is not under oath and subject to cross-examination creates a serious danger to the innocent and should be sparingly allowed. The risks inherent in allowing hearsay are such that we are not prepared to create a hybrid exception to allow the note in evidence or to force the note into an exception to which it does not belong. The admission of the note was erroneous but does not call for reversal if there was other substantial evidence to support the court's finding.

■ When an action is to the court sitting without a jury, the rules of exclusion of evidence are less strictly enforced. *State v. Whaley,* 512 S.W.2d 431, 435 (Mo.App. 1974). The admission of improper evidence in a nonjury case is not ordinarily a ground for reversal, at least where it did not play a critical role in the decision. *Kramer v. Leineweber,* 642 S.W.2d 364, 369 (Mo.App. 1982). In a jury-waived case a certain amount of latitude in the admission of evidence is allowed, and even where an error is made in the admission of some evidence, except where the trial court relied on that evidence in arriving at its finding, such error is ordinarily held to be nonprejudicial. *State v. Leigh,* 580 S.W.2d 536, 545 (Mo. App.1979). See also, *State v. Wahl,* 137 Mo.App. 651, 119 S.W. 453, 454 (1909); 24B C.J.S. Criminal Law § 1915(18), p. 122. Admitting the note in evidence is not reversible error as the trial judge stated that the evidence as to defendant's "guilt was overwhelming without the suicide note", and indicated he would have found defendant guilty even if it had not been admitted. We have no reason to believe that he would not have so found had he excluded the note. We hereafter discuss whether the evidence was sufficient to support the trial court's finding of guilty absent the note left by McCurdy.

■ In determining the sufficiency of the evidence, the evidence and all reasonable inferences must be considered in the light most favorable to the state and all evidence and inferences to the contrary disregarded. *State v. Williams,* 600 S.W.2d 120, 121 (Mo.App.1980); *State v. McGee,* 592 S.W.2d 886, 887 (Mo.App.1980). A submissible case may rest purely upon circumstantial evidence, provided that the facts and circumstances are consistent with each other, consistent with the hypothesis of guilt, and inconsistent with any reasonable hypothesis of innocence. *State v. McGowan,* 636 S.W.2d 354, 356 (Mo.App.1982). While the circumstances must be such as are inconsistent with defendant's innocence, it is not necessary that they be absolutely conclusive of his guilt, and the evidence need not demonstrate an absolute impossibility of innocence. *State v. Buffington,* 588 S.W.2d 512, 514 (Mo.App.1979). Viewed in this posture, the evidence was sufficient to support the conviction.

■ The record is replete with incidences showing defendant's hostility toward

Karlene Hodge. Defendant expressed numerous times his desire to kill or harm her. He was attempting to hire someone to kill her shortly before the assault. He had stated that Kenneth McCurdy owed him $2000 and that the assault would be done for $2700, $2000 that he was owed by the man he had hired and $700 more that he would pay him. McCurdy drove a white pickup truck and such a truck was at defendant's trailer the Sunday before the assault. Defendant stated that the man he had hired had a white pickup there that night. McCurdy was nervous when the sheriff questioned him about the assault. He was to return to the sheriff's office the next day, but killed himself that day. The circumstances of the assault conformed to the plan defendant had that Karlene Hodge be shot at while on her way to work. It happened near a railroad track and a shotgun was used. His statements to Donna Garris after the assault strongly indicate he was involved in it. We think that it is clear that there was sufficient evidence to support the conviction. The circumstances shown by the state's evidence were consistent with the hypothesis of defendant's guilt and inconsistent with any reasonable hypothesis of his innocence.

We next discuss defendant's contention that the trial court erred in admitting into evidence testimony of the assault committed by defendant on Karlene Hodge on March 21, 1981. Defendant contends that it was erroneous because it showed a separate and distinct crime and lacked any legitimate tendency to establish defendant's guilt of the charge on which he was on trial. The evidence showed that the defendant's desire to harm or kill Karlene Hodge was present when the assault questioned in this point occurred and continued until the assault charged.

▆ Evidence of another crime is inadmissible unless it has some legitimate tendency to establish the defendant's guilt of the crime charged and is competent if it tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or identity of the person charged.

State v. White, 621 S.W.2d 287, 293 (Mo. 1981). Evidence of a prior assault when part of a continuing scheme is admissible in a charge for a later assault. Id. See also State v. Bolden, 494 S.W.2d 61, 65 (Mo. 1973); State v. Simmons, 602 S.W.2d 13, 15 (Mo.App.1980). The evidence of the prior assault was admissible as it was part of the same scheme to harm Karlene Hodge as the assault charged.

▆ Defendant also contends that the trial court erred in allowing evidence by several witnesses which pertained to statements and conduct of defendant related to Karlene Hodge because the testimony was too remote in time from the assault. The statements and conduct questioned occurred from approximately the time that defendant and Karlene Hodge were divorced in April of 1980, through the summer of 1981. Whether evidence is inadmissible because it is too remote is a matter resting largely in the sound discretion of the trial court. State v. Stanley, 639 S.W.2d 237, 239 (Mo. App.1982). As the evidence indicated that defendant's attitude toward Karlene Hodge remained the same during the period in question, and continued until after the assault charged, and that because of his feelings toward her, he hired her assailant, we find no abuse of discretion in admitting the evidence complained of here. It related to his reasons for wanting to harm her and his threats to do so. It showed not separate and unrelated incidents but a continuing course of action by defendant which lead to the assault on Karlene Hodge.

As we find no prejudicial error in the trial, the judgment is affirmed.

HOGAN, P.J., and CROW, J., concur.

MAUS, J., disqualified.