**James Edward HODGE,**
**Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 15246.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 19, 1988.

Motion for Rehearing or Transfer
Denied May 2, 1988.

Ronald A. Conway, Asst. Public Defender, Springfield, for movant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., for respondent.

HOGAN, Judge.

■ In this proceeding for postconviction relief under former Rule 27.26,[1] movant James Hodge (to whom we shall refer as the defendant) appeals from an order denying relief. We affirm.

Upon trial to the court without the intervention of a jury, defendant was convicted of assault in the first degree as defined and denounced by § 565.050, RSMo 1978, and his punishment was assessed at imprisonment for life. On appeal, this court affirmed the conviction and sentence. *State v. Hodge,* 655 S.W.2d 738 (Mo.App.1983). In this case, defendant sought collateral relief on the grounds that he did not voluntarily waive his right to a jury trial and was denied the effective assistance of counsel.

The motion court found that the defendant voluntarily chose to waive a jury trial and that defendant received the effective assistance of counsel. Our review is limited to determining whether the findings, conclusions and judgment of the motion court were clearly erroneous. Former Rule 27.26(j); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo.banc 1987). Such findings are deemed clearly erroneous only if, after a review of the entire record, the appellate court is left with a definite and firm conviction that a mistake has been made. *Sanders v. State,* 738 S.W.2d at 857. The weight of the evidence and credibility of the witnesses are matters for the motion court and that court may reject testimony even though it is uncontradicted. *Shoemake v. State,* 462 S.W.2d 772, 775[1–4] (Mo.banc 1971); *Johnson v. State,* 615 S.W.2d 502, 505[2] (Mo.App.1981).

■ At the State's request, the trial court took judicial notice of the transcript from the original trial and its own file in that case. Such action was proper. *State v. Stidham,* 403 S.W.2d 616, 618[1–6] (Mo.1966); *State v. Conner,* 500 S.W.2d 300, 304 (Mo.App.1973). For that matter, we could notice the trial transcript even if it had not been introduced at the postconviction hearing. *Mitchell v. State,* 532 S.W.2d 219, 220–21[1] (Mo.App.1976).

■ Looking to the trial transcript, we find that before the trial began the defendant was examined under oath concerning

---

1. Our references to rules are to Missouri Rules of Court (18th ed. 1987). Rule 27.26 has been repealed, but its provisions are controlling in this case because sentence was pronounced pri-or to January 1, 1988, and this motion was then pending. Rule 29.15(m), effective January 1, 1988.

his desire to proceed without the aid of a jury. The defendant was interrogated by his trial counsel. The questions put to the defendant and his responses to those questions were as follows:

"Q. ... Jim, you and I have had two office conferences, have we, concerning the waiver of a jury, and I have reference to our conference yesterday afternoon about 1:30 in my office, and a conference about a week ago. Is that true?

A. Yes, sir.

Q. And, we have talked about the jury waiver on two occasions?

A. Yes, sir.

Q. About a week ago did you not in fact sign a waiver form; that is, a form which was designated "Waiver of Jury by Defendant"? Do you recall having signed that form?

A. Yes, sir. (Nods head.)

Q. Now, did anyone twist your arm or threaten you or coerce you in any way to waive that jury?

A. No, sir.

Q. *Did anyone promise you anything? Did I promise you or did anyone else promise you something good would happen to you; that is, that you would automatically get probation or a lesser sentence, any promises at all made to you—*

A. *—No, sir.—*

Q. *—to induce you to waive the jury?*

A. *No, sir.*

Q. Now, then, you and I have, and prior to your authorizing me to waive the jury, discussed the various advantages and disadvantages to court trials without a jury and to trials with a jury, is that not true?

A. Yes, sir.

Q. And, among other things, I talked to you a bit about the emotions that can be generated in a case of this type where lay people decide your guilt or innocence and punishment. I talked to you about that, did I not?

A. Yes.

Q. Now, do you understand that a jury, if it should decide the question of guilt or innocence, all twelve jurors would have to vote for guilty or for that matter for innocence? Do you understand that?

A. Yes, sir.

Q. And, if you have a court-tried case, only the judge in his own mind must decide whether beyond a reasonable doubt the state has proven a degree of assault. Do you understand that?

A. Yes.

Q. So, that if one juror would think you are innocent and eleven would think you are guilty, there would be no way they could convict you at that trial, and [in] all probability there would be a mistrial declared by the Court and a retrial of the case at some other time later. Do you understand that?

A. Yes.

Q. Do you understand that once you waive your rights to a jury, that you cannot later ask for a jury, unless the Court should find you guilty and the Court of Appeals should set it aside and demand a retrial? You'd never have a right to a jury trial again on this case excepting under that limited circumstance. Do you understand that?

A. Yes.

Q. Is it still your desire that Judge Crouch should hear this case and that you waive a jury?

A. Yes, sir.

Q. I believe we made that decision sometime around 1 o'clock or 11 o'clock Monday, is that right?

A. Yes.

Q. *And, I told you that the decision had bothered me all weekend as to exactly what should be done, but I had finally agreed with you. Do you recall that?*

A. *Yes, sir.*

Q. Do you recall asking me Monday what we were going to do about a jury, and I told you that I had indicated to the clerk it would be waived, and you told me at that time 'well, I sure don't want a jury'. Do you remember saying that in my presence—

A. —Yes.—

Q. —and in the presence of a companion you had in the office and in the presence of my secretary?

A. Yes, sir.

Q. That was a volunteered comment by you concerning your desire for waiving the jury, and was not elicited by any questions I asked you, was it not?

A. No.

Q. I believe that's all." (Emphasis added.)

The State advised the trial court that it had no questions for the defendant. The trial court thereupon agreed to sit as trier of fact at the defendant's request.

At the postconviction hearing, the defendant called one Virginia Louise Jackson as a witness. Ms. Jackson had been the defendant's employer before his trial. She had also lent him money to employ an attorney after he was charged with assault. Ms. Jackson had been present when the defendant and his attorney discussed a jury trial. The defendant's trial counsel suggested that defendant "would not do himself any good by having a jury trial." Ms. Jackson "spoke up and ... said, 'Why?'" because she thought "something this important and this big should have a jury trial." According to Ms. Jackson, trial counsel had said "'No. I know Judge Crouch. I went to school with him. He's a friend of mine. And, Jim, you don't have anything to worry about this trial.'" Ms. Jackson became angry because the defendant and trial counsel had decided not to invoke defendant's right to trial by jury. The defendant and his trial counsel discussed waiving a jury on another occasion. According to Ms. Jackson, "... We went through the same thing; and I got angry, and stomped out of his office."

At the postconviction hearing, the defendant testified that he and his trial counsel "had three or four discussions" about his right to a jury trial. According to the defendant, his trial counsel had said, "'Jim, I can handle your case okay.' He said, 'Mr. Crouch is a long-time school friend of mine. We went to law school together. And in your case, the way I look at it and of all the evidence I have, I see no need of a jury.'" Further, trial counsel had said "'All [the State] had is circumstantial and hearsay evidence.'" "'That's really no good.'" Further, counsel had advised the defendant "'As far as a jury, I don't think you need one. We'll waive a jury.'" The defendant "had never been to court before, and ... thought [he] ought to have [a jury] on any kind of a case."

There is no doubt that both the Missouri and the United States Constitutions guarantee an accused the right of trial by jury, and those rights may be waived if the waiver is voluntarily, knowingly and intelligently made. *State v. Sharp*, 533 S.W.2d 601, 605 (Mo.banc 1976). Nevertheless, the defendant's first point does not present a question of law; it presents a question of fact. The question is whether the motion court's acceptance of the defendant's testimony at his trial and its rejection of his evidence at the postconviction hearing was clearly erroneous within the meaning of former Rule 27.26(j). Our review of the entire record generates no definite and firm conviction that a mistake was made in ruling that the defendant's waiver of a trial by jury was voluntarily, intelligently and knowingly made.

■ The defendant's argument that he was denied effective assistance of counsel is ingenious but it has little else to commend it. Counsel's point, as framed, reflects his awareness that in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that in order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and (2) that he was prejudiced thereby. *Sanders v. State*, 738 S.W.2d at 857. Carefully fitting his argument to the language of the precedents, counsel finds substandard performance in trial counsel's advice to waive a jury and a reasonable probability that the result of the trial would have been different (prejudice) in speculation that if a jury had been

impaneled inadmissible evidence would have been received, this court would have reversed for the error and on a second trial defendant would have been acquitted.

On trial, there was evidence that the defendant hired a man to inflict a brutal beating upon his former wife. *State v. Hodge*, 655 S.W.2d at 741. This man, one Kenneth McCurdy, committed suicide, leaving a note which stated he was the hired assailant. The note was offered and received in evidence. We held that the note was inadmissible but, given the fact that the case was a court-tried case and given the further fact that the admissible evidence was amply sufficient to sustain the conviction, we further held that admission of the suicide note was not prejudicial. *State v. Hodge*, 655 S.W.2d at 743[8–11]. To reiterate, counsel now says that if a jury had been impaneled, the error would have required reversal, upon retrial the note would have been excluded and the accused would have been acquitted.

Such an argument is, of course, far too speculative to be given credence by this court. Moreover and in any event, the sufficiency of the evidence—without the suicide note—was carefully considered on direct appeal; it cannot be relitigated in this proceeding even though the defendant has a different theory to suggest. *Bannister v. State*, 726 S.W.2d 821, 830 (Mo.App. 1987), *cert. denied*, — U.S. —, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); *Windle v. State*, 669 S.W.2d 44, 46[3] (Mo.App.1984); *Medley v. State*, 639 S.W.2d 401, 404 (Mo. App.1982). Point Two is ill taken. Accordingly, the judgment is in all respects affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.