EX PARTE GEORGE W. WELSH, JR.—162 S. W. (2d) 358.

Kansas City Court of Appeals. June 3, 1942.

*John T. Barker, Forest Hanna, August F. Behrendt, Rees Turpin* and *Gene Brouse* for petitioner.

*Michael W. O'Hern,* Prosecuting Attorney, and *John V. Hill,* Assistant Prosecuting Attorney, for the State.

*Roger C. Slaughter* for sheriff.

No briefs.

CAVE, J.—This is an original proceeding instituted by the petitioner filing his petition for writ of *habeas corpus,* in which he alleges he is being unlawfully deprived of his liberty by Granville A. Richart, Sheriff of Jackson County, Missouri, by being confined in the jail of said county. Our writ was issued by NICK T. CAVE, one of the Judges of the Kansas City Court of Appeals, the presiding judge of this court not being present in Jackson county upon the presentation of the petition. The sheriff has filed his return thereto.

The sole question is, should the petitioner be admitted to bail? Petitioner is being held under a warrant issued by James J. Hurley, a Justice of the Peace within and for Kaw Township, Jackson County, Missouri, said warrant being issued by virtue of an affidavit and complaint filed before said Justice of the Peace, James P. Hurley, charging the applicant with murder in the first degree. Said Justice of the Peace set applicant's preliminary hearing for June 15, 1942, and denied him bail pending said preliminary hearing and remanded him to jail. Appellant seeks release on bail pending said preliminary hearing.

The facts giving rise to the question now presented may be briefly stated.

On March 9, 1941, in Jackson County, Missouri, one Leila Adele Welsh, a sister of George W. Welsh, Jr., this applicant, was found in her bed brutally murdered. The sheriff of Jackson County and his deputies, and the police officers of Kansas City, made a thorough and searching investigation in an effort to learn the identity of the perpetrator of the murder. This applicant, on many occasions, voluntarily submitted himself to the officers for questioning and voluntarily appeared before a Grand Jury investigating the crime, waived his immunity, and testified before said Grand Jury. He showed a co-operative spirit with the officers in their effort to apprehend the

murderer. On January 28, 1942, a Grand Jury returned an indictment against the applicant, charging him with murder in the first degree, and he was duly arrested and has been confined in jail since that time. Upon the motion of this applicant, that indictment was abated by Honorable EMORY H. WRIGHT, one of the Circuit Judges of Jackson County, Missouri, because of improper conduct of said Grand Jury within and without the Grand Jury room. On the same day that said indictment was abated, the Prosecuting Attorney of Jackson County filed a complaint before Joseph J. Dougherty, a Justice of the Peace of Kaw Township, Jackson County, charging the applicant with murder in the first degree. On that complaint, a preliminary hearing was held before said Justice of the Peace, commencing on Monday, May 18, and terminating on May 28, 1942. Many witnesses were presented and testified at said preliminary hearing, both for the State and for the defendant. At the conclusion of said preliminary hearing, the said Justice of the Peace refused to bind the defendant over for trial in the Circuit Court of Jackson County, but on the contrary, discharged and released him. Immediately thereafter, an identical complaint was filed before James J. Hurley, a Justice of the Peace within and for Kaw Township, Jackson County, charging the petitioner herein with murder in the first degree, and as above stated, said Justice of the Peace refused to admit the petitioner to bail pending the hearing on said complaint.

The evidence heard at the preliminary hearing before Joseph J. Dougherty has been filed herein and made a part of the petition for admittance to bail. That evidence consists of some nine hundred typewritten pages and it would serve no useful purpose at this time to discuss in detail such a voluminous amount of evidence. It should be said that there is no direct evidence of defendant's guilt. If the State's evidence is sufficient to warrant a conviction upon a trial, it must be founded entirely upon circumstantial evidence, unless additional facts can be presented by the State other than those presented at the preliminary hearing and now before us.

The bill of rights incorporated in the Constitution of this State, Section 24, Article II, declares:

"That all persons shall be bailable by sufficient sureties, except for capital offenses, where the proof is evident or the presumption great."

A capital offense is one which is punishable—that is to say, liable to punishment—with death. Without doubt, the perpetrator of this murder would be guilty of a capital offense, but that is not the only question confronting us on this application for bail.

For many years, the general rule in Missouri was that bail would be refused after indictment in capital cases because the indictment furnished a strong presumption of guilt, but that principle was overruled by our Supreme Court in banc in Ex Parte Richard Verden,

291 Mo. 552, 1. c. 564. In discussing that point, the Supreme Court said:

"The rule as thus stated is out of harmony with our conclusion here, and that case is overruled in so far as it states such rule. This rule permits the presumption arising from the finding of an indictment for a capital offense to be weighed in the scales when the actual evidence is before the court. When the evidence is before the court, such presumption performs no office whatever."

As stated above, the transcript of the evidence at the preliminary trial is filed herewith, and neither the applicant nor the State offered any further evidence at this hearing; therefore, bail must be granted or denied in the light of the evidence presented. In Ex Parte Verden, *supra*, the Supreme Court laid down the general principle which should govern us in this case. There the court said, 1. c. 563-4:

"Confinement in jail prior to trial is not authorized because defendant may eventually be convicted of the charge by a jury, or as any part of his punishment, if guilty, but to assure his presence when the case is called for trial and during the progress thereof. The only theory on which bail can be denied in any capital case is that the proof is so strong as to indicate the probability that defendant will flee if he has the opportunity, rather than face the verdict of a jury. Where the proof is not evident or the presumption great the accused should be admitted to bail in such sum as in the judgment of the court will insure his presence to submit himself in judgment before the trial court."

The Supreme Court in Ex Parte Burgess, 309 Mo. 397, 1. c. 406, has defined the constitutional provision "when the proof is evident or the presumption great" to mean "simply that if the evidence is clear and strong; leaving a well guarded and dispassionate judgment to the conclusion that the offense has been committed as charged and that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right and should be refused."

At the time of the murder, the Welsh family consisted of the mother, and daughter, Leila Adele Welsh, and the son, George W. Welsh, Jr., and so far as the evidence discloses, they constituted a happy and contented family, there was no evidence of any trouble or ill feeling, and apparently they lived in the home in harmony. The principal facts upon which the State relies to connect the applicant with the murder may be stated briefly as follows: There was evidence tending to prove that his finger prints were found on the window sill, which window opened into the bedroom where Miss Welsh's body was found the next morning and that such finger prints had been left there within two or three days prior to the murder. Outside of the window of deceased's bedroom there was found a large knife sticking in the ground, which had evidently been used by the murderer; a

witness for the State testified that in his opinion he had sold that knife to George W. Welsh, Jr., some three or four days before the murder. Near the Welsh home there was found a pair of ordinary white cotton gloves which the State charges were worn or possessed by the murderer. A witness for the State testified that in his opinion he had sold a similar pair of gloves to Welsh, although he did not report that matter to the officers until many months after the crime had been committed. A witness for the defendant testified that she had sold a similar pair of gloves to a man, describing him, shortly before the murder, and that Welsh was not the purchaser of such gloves. She reported the matter to the officers almost immediately after the murder was committed and the gloves found and had on all occasions stated that Welsh was not the purchaser of the gloves. A hammer, which it is alleged was used in the commission of the murder, was found near the scene and a witness testified for the defendant that he had sold that hammer to a man shortly before the murder and that Welsh was not the purchaser. Another witness for the State testified that he was in the office of one of the attorneys representing Welsh and overheard a conversation between the attorney and Welsh in which Welsh said, in substance: "We are both worried about everything. The way things is going. We better make a clean breast of it and have it over with. We are worried to death."

There were other facts and circumstances testified to by various witnesses which might tend to throw some light on who the murderer was, but we will not lengthen this opinion by detailing such matters. It is not within our province to, and we do not, pass upon the guilt or innocence of defendant; however, we do not conclude that the evidence now before us does not meet the constitutional requirement of the proof being "evident" or the "presumption great."

The applicant has spent practically his whole life in Kansas City, and from the day his sister was found murdered on March 9, 1941, until he was arrested about January 28, 1942, he was accessible to the officers at all times, except for a short time voluntarily spent in the State of California from where he voluntarily returned to his home in Kansas City; that he has reasonably cooperated with the officers in an effort to solve this rather mysterious and revolting murder and to apprehend the culprit. All such facts and circumstances lead to the conclusion that he will not flee from the officers, but will, if admitted to bail, be present to answer the complaint filed against him in the Justice of the Peace Court of James J. Hurley.

We conclude that petitioner is entitled to be released on bail pending a preliminary hearing on the complaint filed in the Justice of the Peace Court of the said James J. Hurley, or to any other Justice of the Peace Court to which said cause may be properly transferred. The amount of bail for said purpose is fixed at Ten Thousand Dollars ($10,000). Bond being offered *instanter,* the bondsmen are duly quali-

fied by us and bond is herewith executed, approved and accepted, and certified to James J. Hurley, Justice of the Peace of Kaw Township, Jackson County, Missouri, and petitioner discharged from custody under said bail. In fixing the amount of bail, ·we have in mind the provisions of Section 25, Article II of the Constitution of Missouri, which says: ''Excessive bail shall not be required.'' To require excessive bail is to deny bail to one who is justly entitled thereto.

All concur.