**STATE of Missouri, Respondent,**

v.

**Theodore Woodrow GREGG, Appellant.**

**No. 51481.**

Supreme Court of Missouri, Division No. 1.

Feb. 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Albert J. Stephan, Jr., Sp. Asst. Atty. Gen., St. Louis, for respondent.

Esco V. Kell, West Plains, for appellant.

HOLMAN, Judge.

The amended information in this case charged defendant with the offense of murder in the first degree. The jury found him guilty of murder in the second degree. Since it was alleged and proved that defendant had been convicted of a prior felony the court determined his punishment which was fixed at imprisonment in the penitentiary for a period of twenty-five years. See §§ 559.010, 559.020, 559.030, and 556.280. (All statutory references are to RSMo 1959, V.A.M.S.) Defendant has appealed.

Robert King suffered a gunshot wound at his home in Thayer, Missouri, on October 7, 1963, from which he died a few hours thereafter. The State in presenting its case relied primarily upon the presence of defendant at the scene of the offense and evidence of a number of statements alleged to have been made by him in which he admitted the shooting.

Defendant and deceased were both disabled war veterans and each lived primarily from the proceeds of a veterans disability pension. They had lived together for about

two years and were apparently good friends. The evidence indicated that they both drank intoxicating liquors regularly, perhaps to excess. On the day of the shooting deceased, defendant, Bob Braden, and Marvin Cotham were "having a party" at deceased's home. They started drinking about nine o'clock a. m. and apparently all of them were drunk most of the day. Marvin Cotham left the King home at about three o'clock and Braden had left prior to that time. Cotham testified that there had been no quarrel or trouble of any kind while he was at the home. At about four-thirty p. m. on that date Grace Black who lived nearby heard a shot. About thirty minutes later defendant went to her home and informed her that he had "shot a guy." Defendant attempted to make a telephone call from her home but was unable to reach his party. He had a rifle with him which he gave to Mrs. Black, at her request, and she then called E. J. Smith, a deputy sheriff, who went to her home and they went together to the King home. Deceased was lying on the lawn and when asked what had happened he stated that defendant had shot him. Defendant first denied that and then said, "You damn right I shot you, Bob. Do you want me to shoot you again?" Deceased was found to have a bullet hole in the left side of his chest just below the nipple and an exit hole in his back somewhat lower than the chest wound. Deceased was taken by ambulance to Memorial Hospital in West Plains where he died. A pathologist performed an autopsy and concluded therefrom that deceased died from hemorrhage resulting from the bullet wound.

Desmon Harber, City Marshal of Thayer, testified that as Deputy Sheriff Smith was taking defendant to jail Smith stopped his car and told him that a man had been shot, and defendant said to the witness, "I just shot a man." Harber stated that when he later took a meal to defendant at the jail defendant told him he had shot King just like he would a dog.

Sheriff Burleson testified that he talked with defendant on October 8 at the jail and that defendant asked him how Bob was and, upon being told that Bob had died, defendant said, "I hope they give me the damn gas chamber. I don't want a long time in the penitentiary." He also testified that when Patrolman Kelsey was fingerprinting defendant, Kelsey was looking at defendant's rifle and mentioned that it ought to be a good deer rifle, and defendant said, "I don't know about a deer rifle, but it took care of old Bob."

There was evidence that defendant had bought the rifle about ten days before the shooting. The bullet was never found but there was expert testimony that an expended cartridge case found at the King home had been fired in defendant's gun.

Defendant did not testify. The witnesses he produced did not add much to the testimony developed by the State. He presented additional evidence indicating that defendant and deceased had been good friends. One witness testified that deceased introduced defendant to him a few days before the shooting as "My buddy." There was also further evidence presented which indicated that deceased and defendant were both drunk on the day of the shooting. Mrs. Black testified that King told her about eleven-thirty a. m. on that date that defendant had "passed out" and she observed that defendant was "wobbling" when he came to her home and told her about the shooting.

■ The first point briefed is that the court erred in refusing to give an instruction offered by defendant which would have submitted the defense that deceased died as the result of an accident. In support of that contention defendant cites State v. Martin, 349 Mo. 639, 162 S.W.2d 847, in which a similar instruction was given. The distinction between the two cases is that in the Martin case there was evidence that the deceased died as the result of an accidental injury, whereas in the case at bar there was no evidence from which the jury reasonably could have found that deceased was accidentally shot. In the absence of

evidence upon which to base the instruction the court properly refused to give it. This point is without merit.

■ Defendant also contends that there was not sufficient substantial evidence to support a submission of murder in the second degree. He states that such is particularly true since the evidence was circumstantial and no motive was shown. In view of the evidence of defendant's admissions this is not a circumstantial case. Moreover, we have often held that proof of motive is not absolutely essential in the proof of a submissible murder case, and that is especially true where there is direct evidence of an intentional killing. State v. Dodson, Mo.Sup., 29 S.W.2d 60; State v. Wolff, 340 Mo. 659, 101 S.W.2d 973. Defendant's presence at the scene of the shooting and the evidence indicating that the fatal shot came from defendant's gun, when considered in connection with defendant's statement that he shot deceased "like he would shoot a dog" (and other similar admissions), would reasonably support a finding that defendant intentionally shot deceased with the rifle. We have frequently held that "when the evidence shows the defendant intentionally killed deceased with a deadly weapon that is sufficient to sustain a conviction of second degree murder. State v. Thomas, Mo.Sup., 309 S.W.2d 607, 609, and cases cited." State v. Williams, Mo.Sup., 323 S.W.2d 811, 813. See also State v. McQueen, Mo., 399 S.W.2d 3, decided concurrently herewith. We rule that the evidence was sufficient to make a submissible case of second degree murder.

■ There is no merit in the contention that the court erred in admitting the testimony of Marshal Harber that defendant said he "shot Mr. King just like he would a dog" and the testimony of Sheriff Burleson that defendant said, "I hope they give me the damn gas chamber, etc." Defendant says those statements should not have been admitted because inflammatory and prejudicial. Of course, admissions of a defendant are always prejudicial in the sense that they

may tend to prove his guilt. That is the purpose for offering and admitting them. "'Any statements made by a defendant, which tend to incriminate him and connect him with the crime charged, are admissible when voluntarily made.' State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, 881." State v. Thresher, Mo.Sup., 350 S.W.2d 1, 9. As indicated, we rule this point adversely to defendant.

■ Defendant has briefed the contention that the court erred in failing to give (sua sponte) "instructions on negligent manslaughter or lesser offense than second degree murder." He says such instructions should have been given because no motive was shown. We do not agree. We have heretofore ruled that motive is not an essential element of second degree murder and that the evidence warranted the second degree submission. Moreover, there was no evidence which would have supported a submission of manslaughter whether on the theory of culpable negligence or otherwise. Defendant's statements that he shot deceased "just like he would a dog" and "You damn right I shot you, Bob. Do you want me to shoot you again" are certainly contrary to any suggestion of negligent manslaughter. This contention is accordingly overruled.

■ The following occurred during the argument of the prosecuting attorney: "Mr. Davidson: * * * malice can be inferred from the facts; he intentionally shot him, and he has voiced here on different occasions that he shot him. One: 'I shot him down like a dirty dog.' It wasn't controverted. The defendant didn't deny it; there was no evidence—Mr. Kell: I object to that statement and ask that the jury be instructed to disregard it. The Court: The jury is instructed to disregard the statement, 'The defendant didn't deny it.' Mr. Kell:—and I ask that the jury be discharged. The Court: That will be denied. Mr. Kell:—and I ask that the attorney be reprimanded. The Court: That will be denied."

Defendant contends that the statement of Mr. Davidson was a reference to his failure to testify and hence the court erred in failing to sustain his motion to discharge the jury. Unquestionably § 546.270 and S.Ct. Rule 26.08, V.A.M.R. provide that no attorney in the case shall refer to the failure of the accused to avail himself of his right to testify. The first question to be decided here is whether the statement complained of was, in fact, a reference to the failure of defendant to testify. We do not think the argument would reasonably be construed as a reference to such failure. It appears to us that the point the prosecutor was attempting to make was that defendant intentionally shot deceased. In support of that conclusion he stated that defendant had admitted it—it wasn't controverted—the defendant didn't deny it. There were a number of occasions when defendant had an opportunity to deny the shooting other than from the witness stand. The first opportunity was when deceased said that defendant had shot him. While defendant momentarily denied it, he admitted the shooting almost immediately. He subsequently talked about the shooting with a number of officers and did not deny it but, in fact, admitted that he shot deceased.

 The only possibility of construing the argument as a reference to defendant's failure to testify is to say that the statement, "defendant didn't deny it," referred to the testimony concerning his statement, "I shot him down like a dirty dog." It would appear that the only opportunity defendant had to deny that statement was at the trial. While we do not believe that is the proper construction of the argument, if any juror did so construe it, we think, under the particular situation here presented, the court's instruction to disregard the statement was sufficient to cure the error. See State v. Conway, 348 Mo. 580, 154 S.W.2d 128 [12]; State v. Kelleher, 201 Mo. 614, 100 S.W. 470; State v. Fitzgerald, 130 Mo. 407, 32 S.W. 1113 [16]; State v. Miller, Mo. Sup., 12 S.W.2d 39 [5]; State v. Flick, Mo.

App., 198 S.W. 1134; and Anno. 84 A.L.R. 784, 795.

While we have seen fit to discuss the merits of this contention we have not overlooked the fact that no reason was stated by defendant's counsel as the ground for his objection and the requests that the jury be discharged and that the attorney be reprimanded. An objection or other request for relief is usually held to be insufficient where no ground is stated. State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22 [29]. In addition to what we have already said, we are of the opinion that the failure to state grounds for the relief requested is a further justification for the refusal of the trial court to reprimand the attorney or discharge the jury. The contention is disallowed.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.