**STATE of Missouri, Respondent,**

v.

**William John ROTHAUS, Appellant.**

**No. 59113.**

Supreme Court of Missouri,
En Banc.

Dec. 8, 1975.

J. Martin Hadican, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Scott A. Raisher, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant, William John Rothaus, was convicted in the Circuit Court of the City of St. Louis of obtaining a controlled substance by forgery of a prescription (§ 195.-170, RSMo 1969), and his punishment, under the provisions of the Habitual Criminal Act, was assessed at imprisonment for a term of three years. Following rendition of judgment and imposition of sentence, an appeal was perfected to the St. Louis District of the Court of Appeals. The case was transferred to this Court, after opinion, by order of this Court. We decide the case here the same as on original appeal. Mo.Const. Art. V, § 10.

According to the uncontradicted evidence, on July 3, 1972, appellant presented a prescription for dilaudid tablets to a pharmacist at Bushell Pharmacy in the City of St. Louis. The pharmacist sold 20 tablets to appellant. The signature of Dr. E. V. Cowdry appeared on the prescription. It was forged. Dr. Cowdry did not sign the prescription. He had never treated appellant.

Appellant's only assignment of error is that the trial court "erred in failing to grant the defendant's request for a mistrial during the closing argument on behalf of the state when the attorney for the state stated that only the defendant knew whether or not the prescription in question was forged, which statement was a comment upon the failure of the defendant to testify and thus violated defendant's rights per Article I, Section 19 of the Constitution of Missouri and Amendments Five and Fourteen of the United States Constitution."

The record on appeal reveals the following transpired at trial during closing argument:

"MR. MOSS: Fourth, that the defendant knew said prescription to be false, forged, and counterfeit. How does the defendant know that it's false, forged and counterfeit? You arrive at that decision by circumstances, by looking at the surrounding facts. The only one who can actually say he knew is the defendant.

"MR. HADICAN: One moment, Your Honor, I want at this point to approach the bench, please.

"(Thereupon the following occurred out of the hearing of the jury:)

"MR. HADICAN: Your Honor, I want to object to the comment just made by the prosecutor in his closing argument, on the grounds it violates the fact the defendant did not take the stand and he has an absolute right, under the Supreme Court decision, not to. It's highly prejudicial and for that reason, Your Honor, I would like the jury be instructed to disregard it and we would request a mistrial.

"MR. MOSS: I might point out to the Court that my remarks are, that the only one who could actually say that he knew it was false was the defendant. I didn't say that he knew it was true or anything else.

"THE COURT: I will sustain the objection and I will instruct the jury to disregard the last statement of counsel. However, I don't believe the comment was so prejudicial to warrant a mistrial and that request is denied.

"(Thereupon the trial was resumed before the jury as follows:)

"THE COURT: Ladies and gentlemen, who are instructed to disregard the last remark made by counsel for the State just prior to making of the objection.

"MR. MOSS: Ladies and gentlemen, how do we know? We know by the circumstances. We know that the man had to know he wasn't a patient of Dr. Cowdry's. Dr. Cowdry said he never saw him. He had to know that Dr. Cowdry himself had never given him this prescription, had never prescribed it for him."

The law is established in Missouri that when arguments made by the prosecutor do not contain *direct* and *certain* references to the failure of an accused to testify, an "appellate court will not interfere unless the record shows that the trial court abused its discretion to the prejudice of the appellant * * * ;" but that arguments made by a prosecutor, wherein there are *direct* and *certain* references to failure of an accused to testify, constitute reversible error. *State v. Tiedt,* 360 Mo. 594, 229 S.W.2d 582, 588 (1950); *State v. Hutchinson,* 458 S.W.2d 553, 555, 556 (Mo.1970); *State v. Shuls,* 329 Mo. 245, 44 S.W.2d 94 (1931).

Appellant cites *State v. Shuls,* supra, and *State v. Lindner,* 282 S.W.2d 547 (Mo.1955). The State cites *State v. Haynes,* 455 S.W.2d 504 (Mo.1970) and *State v. Gregg,* 399 S.W.2d 7 (Mo.1966).

In *Shuls,* the assistant prosecuting attorney said: "Who was there at the hold-up, gentlemen of the jury? There were three parties there and these two girls were the only ones that testified, and what did they say?" The Court referred to the argument as follows (44 S.W.2d, at page 97):

"* * * That it was in effect a pointed reference to the fact that defendant had not testified is too plain for controversy, and that it was so intended and necessarily so understood by the jury does not admit of doubt. The evidence showed clearly and without dispute that there were but three persons present or who witnessed the holdup, the two girls who testified and the defendant who did not. The attorney said that there were three present, 'and these two girls were the only ones that testified.' The reference to defendant's failure to testify could not have been more obvious had he been called by name and the fact baldly stated that he had not taken the witness stand and denied the testimony of the girls."

In *Lindner,* the Assistant Circuit Attorney during defendant's attorney's argument said: "I'm going to object to that remark and ask that counsel be reprimanded. I don't know what this boy says. There is no evidence of any type by him in this case and I ask that the jury be instructed to disregard this remark." The Court referred to these comments as follows (282 S.W.2d, at page 550):

"We think it is clear from the above-quoted portion of the record that the state's attorney did in fact refer to the defendant's failure to testify. We reasonably can give no other construction to his statement that: 'I don't know what this boy says. There is no evidence of any type by him in this case * * *.' 'This boy' admittedly referred to defendant. The two phrases construed together were tantamount in meaning to a statement that 'this boy hasn't said anything in this case.' Except for a direct statement that 'defendant has not testified', we can conceive of no clearer way to express that idea than by the phraseology used in the instant case."

In *Haynes*, the prosecuting attorney said: "We haven't proved that the defendant knew that Dickie Miller was at 322A Glascock Street on December 6, 1966. We don't know how he knew. We don't know how he knew, but we know that if anybody in this courtroom knows this defendant does —." The Court said (455 S.W.2d, at page 505):

> " * * * Undoubtedly, standing alone and without any curative action being taken by the court, the reference would amount to a comment upon appellant's failure to testify and would be reversible error. * * * But here the court *sustained* the objection of appellant's counsel to the argument, and offered to instruct the jury to disregard it * * *. The sustaining of the objection rendered the matter harmless. * * * The trial court observed the incident and any possible prejudicial effect that it might have had on the jury. * * * Under the circumstances, the trial court's broad discretion in such matters will not be disturbed by this court."

In *Gregg*, the prosecuting attorney said: " * * * malice can be inferred from the facts; he intentionally shot him, and he has voiced here on different occasions that he shot him. One: 'I shot him down like a dirty dog.' It wasn't controverted. The defendant didn't deny it; there was no evidence—." The Court held (399 S.W.2d, at page 11) that if any juror construed the argument as a reference to defendant's failure to testify, "under the particular situation here presented, the court's instruction to disregard the statement was sufficient to cure the error."

Here, the Assistant Circuit Attorney said: "How does the defendant know that [the prescription is] false, forged and counterfeit? You arrive at that decision by circumstances, by looking at the surrounding facts. The only one who can actually say he knew is the defendant." As in *Gregg*, we do not think the argument would reasonably be construed as a reference to the failure of appellant to testify. The Assistant Circuit Attorney was referring to the Fourth paragraph of Instruction No. 3, which required the jury to find beyond a reasonable doubt, in order to convict, "that defendant then and there knew said prescription to be false, forged and counterfeit * * *." It would appear that the Assistant Circuit Attorney was attempting to persuade the jury that it must make such determination from circumstantial evidence, "by looking at the surrounding facts." However, if any juror did construe the argument as a reference to the failure of appellant to testify, we believe the trial court's instruction to disregard the statement was sufficient to cure the error. The trial court was of the opinion that the argument was not so prejudicial as to warrant a mistrial. The assertion was raised again by appellant in his motion for new trial, was again considered by the trial court, and was overruled.

We have evaluated the entire record and do not believe the "trial court abused its discretion to the prejudice of appellant." *State v. Tiedt*, supra.

The judgment is affirmed.

HOLMAN, HENLEY and FINCH, JJ., concur.

SEILER, C. J., dissents in separate dissenting opinion filed.

MORGAN and BARDGETT, JJ., dissent and concur in separate dissenting opinion of SEILER, C. J.

SEILER, Chief Justice (dissenting).

I respectfully dissent. The principal opinion suggests that all the state was trying to do by the first paragraph of the closing argument was to persuade the jury it must make the determination about whether the defendant knew the prescription was counterfeit from circumstantial evidence, "by circumstances, by looking at the surrounding facts." But this was only the first step in the prosecutor's devious argument. He was raising in the minds of the jurors the question, why must we do it that way? This he immediately answered. Because the only one who can actually *say* he knew is the defendant, said the prosecutor. Should we assume the jurors were so obtuse that they did not say to themselves, "That's right, we can't find out that way because he did not testify?" There are more ways of calling to a jury's attention the failure of the defendant to testify than actually blurting out, "Look, he did not testify." We have said that juries are " . . . composed of ordinarily intelligent persons who should be credited with having common sense and an average understanding of our language." *Wims v. Bi-State Development Agency*, 484 S.W.2d 323, 325 (Mo. banc 1972).

The principal opinion says that even if the jury did so understand, no matter because the court instructed the jury to disregard the reference. I respectfully disagree. To borrow the view expressed by the late Judge Jerome Frank, in *United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 648–49 (2d Cir. 1946), to call the error harmless is giving the defendant a "juryless" trial and "founded on a record other than that which the jury considered; for the judges are able to and do disregard the improper matter, but it is impossible to know that the jury did."

I believe the court of appeals, St. Louis district, was correct in reversing and remanding this case on the stated ground that the prosecutor, in his closing argument, commented on defendant's failure to testify. In part, the court of appeals, per Stewart, J., said as follows:

"The Fifth Amendment to the Constitution of the United States, which is practically identical with Article 1, Sec. 19 of the Missouri Constitution, provides in part: ' . . . no person . . . shall be compelled, in any criminal case to be witness against himself . . . ' These constitutional provisions have been held to prohibit both State and Federal prosecutors from commenting upon the defendant's failure to testify . . . Rule 26.08(a) and Sec. 546.270 also furnish the accused with the same protection.

"To constitute a violation of the prohibition the prosecutor must make a direct and certain reference to the failure of the accused to testify . . . Crucial to this determination is whether the prosecutor made use of the words 'defendant' or 'accused' and 'testify' and, thus, called to the jury's attention the accused's failure to testify . . .

" . . .

" . . . We view the statement of the prosecutor within the framework of the facts before the jury. Only three persons could have testified: the pharmacist who filled the prescription; the doctor whose name appeared on the prescription; and the defendant who presented the prescription. Defendant was the only person who could give direct evidence as to whether ' . . . defendant then and there knew the prescription to be false, forged and counterfeit . . . '

"Within this framework we look at the statement which makes use of the words 'say' and 'defendant' which are synonymous with 'testify' and 'accused'. The statement

in this case meets the 'ultimate test' because the 'jury's attention was called to the fact that the accused did not testify' . .

"We empathize with the trial court where, as in this case, a trial has progressed well into the closing argument and the court is faced with the request for a mistrial. However, we cannot treat lightly the constitutional rights of an accused. The very purpose of the statute and the rule is to keep 'absolutely from the jury any reference to the constitutional right . . . against self-incrimination.' . . .

" . . . The remark was a direct reference to defendant's failure to testify, and was prejudicial.

"The argument in this case is not a form of argument to be indulged as against the rule and the constitutional statutory rights of an accused."

I would discharge this transfer as improvidently granted and let stand the opinion of the court of appeals.