**Theodore W. GREGG**

v.

**Donald W. WYRICK, Warden, Missouri
State Penitentiary.**

**No. 77–0864–CV–W–3.**

United States District Court,
W. D. Missouri,
W. D.

May 1, 1978.

Theodore W. Gregg, pro se.

Michael Finkelstein, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

RUSSELL G. CLARK, District Judge.

Petitioner, presently confined at the Missouri State Penitentiary, Jefferson City, has filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254. He paid the applicable filing fee.

The facts surrounding petitioner's state conviction are recounted in *State v. Gregg,* 399 S.W.2d 7 (Mo.1966). Petitioner and one Robert King, both disabled war veterans relying primarily on their pensions, lived together and were good friends. Both drank regularly. On October 7, 1963, petitioner, King, and two other men "(had) a party" at King's home. The four men drank all day. At approximately 4:30 p. m. that afternoon, petitioner went to a neighbor's house and told a neighbor that he had "shot a guy;" petitioner gave the neighbor a rifle he had carried. The police were called, and a deputy sheriff returned to King's house with petitioner and the neighbor. They found King lying on the lawn with a bullet wound in his chest. Petitioner first denied having shot King, but then said, "You damn right I shot you, Bob. Do you want me to shoot you again?" *Id.* at 9. King died shortly thereafter.

Desmon Harper, City Marshal of Thayer, Missouri, testified at trial that the deputy sheriff stopped the car carrying petitioner to jail. The sheriff told the Marshal that a man had been shot, and petitioner said, "I just shot a man." Harper also testified that when he took a meal to defendant at the jail, petitioner said that he had shot King just like he would a dog. *Id.*

Sheriff Burleson testified that he spoke with petitioner at the jail on October 8, 1963. According to the sheriff, petitioner asked how King was and, when told that King had died, stated "I hope they give me the damn gas chamber. I don't want a long

time in the penitentiary." The sheriff also testified that when Patrolman Kelsey fingerprinted petitioner, Kelsey looked at the rifle used in the shooting and said that it ought to be a good deer rifle. Defendant replied, "I don't know about a deer rifle, but it took care of old Bob." *Id.* at 9. Petitioner was charged by information with first degree murder. He was held without bond. *Id.* at 8.

Petitioner produced little evidence at trial, and did not take the stand himself. He presented evidence showing that he and King were friends and that both were drunk on the day of the shooting. The jury found petitioner guilty of second degree murder. Because petitioner had been convicted of a prior felony, the court imposed a sentence of 25 years imprisonment. At the time it imposed sentence, the Court apparently refused to give petitioner credit for time spent in jail prior to his conviction.

This petition asserts that the trial judge's failure to credit petitioner's pre-trial jail time against his sentence was a denial of equal protection under the rule of *King v. Wyrick*, 516 F.2d 321 (8th Cir. 1975). Respondent asserts that petitioner is not entitled to relief because he has failed to exhaust state remedies, as required by 28 U.S.C. § 2254(c). Respondent also asserts that petitioner is not entitled to relief because he has failed to state a meritorious claim. The Court will address the exhaustion issue first.

From records submitted by respondent, it appears that petitioner filed an original petition for writ of habeas corpus raising the jail time credit issue in the Missouri Supreme Court on April 13, 1977. The Supreme Court directed the state to show cause why the writ should not issue; in response, the state asserted that petitioner was not entitled to issuance of the writ because he would not be entitled to immediate release and because he had not previously filed his petition in the appropriate state circuit court as required by Missouri Rule 91.59. The state also asserted that petitioner's proper remedy was through a motion under Missouri Rule 27.26. Finally, the state argued that petitioner was not entitled to relief on the merits of his claim.

The Supreme Court summarily denied the petition on May 14, 1977. This action followed.

■ It is axiomatic that a prisoner seeking federal habeas corpus relief must give state appellate courts a fair opportunity to rule on his claims before they are presented to the federal courts. *Pitchess v. Davis*, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1972); *Rice v. Wolff*, 513 F.2d 1280 (8th Cir. 1975). *Green v. Wyrick*, 414 F.Supp. 343, 347–48 (W.D.Mo.1976), elaborates on the general exhaustion rules:

> It is well settled in this district that the summary denial of a petition for habeas corpus by the Supreme Court of Missouri does not constitute the exhaustion of state remedies. See, e. g., *Lindner v. Peterson*, 324 F.Supp. 1261 (W.D.Mo. 1971). Such a denial may be for failure to comply with Missouri Rule 91 in any essential respect, for failure to state sufficient facts entitling petitioner to relief, or for failure to employ the proper remedy such as the post-conviction remedy provided by Missouri Rule 27.26.

It appears to be settled that the summary denial of a habeas corpus petition by the Missouri Supreme Court for failure to use the remedy available under Rule 27.26 is without prejudice to the filing of such a motion. *Wiglesworth v. Wyrick*, 531 S.W.2d 713 (Mo.1976) (en banc); *see also Green v. Wyrick, supra* at 348.

■ It is apparent that petitioner's original action in the Missouri Supreme Court was summarily denied because petitioner did not comply with the provisions of Rule 91.59, which requires the filing of a state habeas corpus petition "in the first instance" in the circuit court, and then, upon an adverse decision there, successive petitions in the appropriate appellate courts. *Green v. Wyrick, supra* at 348, *citing Edwards v. Engledorf*, 176 S.W.2d 32 (Mo.App.1943). Further, it appears that the summary denial of petitioner's original state action was based on his failure to use the remedy available under Missouri Rule 27.26. It is well settled that claims con-

cerning proper credit for pre-trial incarceration must be raised through a motion under Rule 27.26. *See, e.. g., Valentine v. State*, 541 S.W.2d 558 (Mo.1976). Although it appears that petitioner has filed at least one Rule 27.26 motion in the past, the rule does not foreclose the filing of a second petition. *See* Rule 27.26(d), V.A.M.R.; *Green v. Wyrick*, 414 F.Supp. 343, 349 (W.D. Mo.1976). Further, on the record as it now stands, the Court cannot conclude that the Missouri courts would not entertain petitioner's allegations on the issues in this action. *See Eaton v. Wyrick*, 528 F.2d 477 (8th Cir. 1975). The Court therefore concludes that petitioner has failed to exhaust state remedies.[1] This action may be dismissed on that basis.

Turning to the merits of petitioner's claim, respondent asserts that the doctrine of *King v. Wyrick*, 516 F.2d 321 (8th Cir. 1975), is inapplicable to this case because petitioner was confined on a non-bailable offense and could not secure his release regardless of his wealth. In examining this argument, it is necessary to explore the holding in *King* and other cases more carefully.

In *King*, a state defendant was held on a first degree murder and robbery charges, and bail was set at $8,000. The defendant could not raise the amount because he was indigent. At trial, King entered a guilty plea to second degree murder charges, but the state trial court refused to credit his jail time against his murder sentence. The Eighth Circuit ordered King's jail time credited against his sentence, reasoning:

> Since *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), many federal

courts have come to recognize that failure to grant credit on an indigent prisoner's sentence for time spent in jail before sentencing for failure to meet bail due to indigency has constitutional implications. Several courts have held that it is a denial of equal protection not to grant an indigent prisoner credit for jail time served after he has been unable to meet bail due to indigency when his sentence plus the previous jail time adds up to a total period of incarceration longer than the maximum allowable term prescribed by law for the offense committed. . . This result follows from the holding in *Williams v. Illinois, supra*, 399 U.S. at 244, 90 S.Ct. at 2023, that "the Equal Protection Clause of the Fourteenth Amendment requires that the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their economic status." It was pursuant to this equal protection rationale that the Magistrate recommended that petitioner be granted credit on the maximum 10-year sentence for burglary.

It is obvious, however, that equal protection considerations obtain as well in the case of an indigent prisoner who is denied jail time credit on a prison term less than the allowable maximum prescribed by statute. He still must serve a longer term in connection with the offense than would a wealthier prisoner who is sentenced to the same term but who is able to meet bail to avoid incarceration before trial and sentencing. . . Thus several district courts have resolved jail time credit cases on equal protection grounds without limiting the implications of the constitutional analysis to circumstances in which the total length of incar-

---

[1]. Although neither party has addressed this issue, it appears that the Missouri Supreme Court's decision in *Valentine v. State*, 541 S.W.2d 558 (Mo.1976), does not render exhaustion futile in this case. Although a majority of the *Valentine* court states that it disagrees with the rule of *King v. Wyrick, Valentine* nonetheless follows the general pattern established by earlier Missouri cases on the same issue: individual examinations of the facts to determine if the trial judge abused his discretion in denying credit for pre-trial jail time. *See, e. g., Neigh-*

*bors v. State*, 515 S.W.2d 792 (Mo.App.1974); *Meeks v. State*, 512 S.W.2d 215 (Mo.App.1974). Further, *Valentine* rested on an individual determination that the prisoner was confined for a nonbailable offense; the Court carefully recounted the facts showing that bail was not available. *Valentine* contains no blanket denial of jail credit for all persons similarly situated. See *Cook v. Wyrick*, 428 F.Supp. 98 (E.D.Mo. 1977). Accordingly, the Court cannot find that *Valentine* renders exhaustion in this case futile.

ceration exceeds the maximum term allowed by law.

*King v. Wyrick*, 516 F.2d 321, 323–34.

The doctrine set forth in *King* must be examined against other principles applicable to bail and bailable offenses. In *Mastrian v. Hedman*, 326 F.2d 708 (8th Cir. 1964), the Eighth Circuit discussed bailable offenses at some length:

> Neither the Eighth Amendment nor the Fourteenth Amendment requires that everyone charged with a state offense must be given his liberty pending trial. While it is inherent in our American concept of liberty that the right to bail shall generally exist, this has never been held to mean that a state must make every criminal offense subject to such a right or that the right provided as to offenses made subject to bail must be so administered that every accused will always be able to secure his liberty pending trial. Traditionally and acceptedly, there are offenses of a nature as to which a state properly may refuse to make provision for a right to bail. . . . As to the offenses, however, for which a state has provided a right to bail it may not, any more than as to other substantive or procedural benefits under its criminal law system, engage in such administration as arbitrarily or discriminatorily to effect denial or deprivation of the right to a particular accused.

*Id.* at 710.

■ Taken together, *King* and *Mastrian* do not require the states to give every prisoner who is detained pending trial credit for time he spends in jail awaiting trial. Instead, the two cases establish that where bail is available and the prisoner cannot secure his release on bail pending trial because of his indigency, the state must credit the pre-trial confinement against the final sentence. Failure to do so violates the equal protection clause of the Fourteenth Amendment. Petitioner's pre-trial confinement must be measured against this standard.

■ Article I, section 20 of the Missouri Constitution provides "(t)hat all persons shall be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." As this section implies, all criminal offenses in Missouri are potentially bailable, *see Williams v. Missouri Department of Corrections*, 463 F.2d 993 (8th Cir. 1972) with the outlined exceptions. It appears that a person held for a capital offense may request a hearing to determine if he is entitled to bail, but unless he does so, Missouri law requires him to be held in custody without bail. *Cf. State v. Lang*, 491 S.W.2d 12 (Mo.App. 1973).[2]

*Ex parte Verden*, 291 Mo. 552, 237 S.W. 734 (1922), states that the test for determining whether a person indicted for a capital offense is entitled to release on bail under Article I, § 20, is whether the evidence before the trial court at the bail hearing strongly tends to show guilt of a capital offense. *Ex parte Welsh*, 236 Mo.App. 1129, 162 S.W.2d 358 (1942), states that bail should be refused where the evidence is clear and strong that an offense has been committed, that the accused is the guilty agent, and that he would be subject to capital punishment. *See also Valentine v. State*, 541 S.W.2d 558, 561 n.2 (Mo.1976) (Seiler, C. J., dissenting). First degree murder, the charge originally filed against petitioner, is unquestionably a capital offense under Missouri law. RSMo § 559.010, 559.030 (1959).

■ The record does not indicate whether petitioner requested a bail hearing at the time of his original confinement. Accordingly, the Court will measure the evidence offered by the prosecution against the standard of *Verden* and *Welsh* to determine whether bail was available to petitioner. As noted by the Missouri Supreme Court, in *State v. Gregg, supra*, petitioner admitted shooting King, and stated that he had done

---

2. Petitioner does not challenge Article I, § 20 or Missouri procedures for bail in capital cases in this action.

so intentionally. Petitioner's statements to Marshal Haber and Sheriff Bruleson are persuasive evidence that he acted deliberately and with malice. In short, petitioner's own admissions while in custody would have amply supported findings that an offense had been committed, that petitioner had in fact been the guilty agent, and that the murder of King was willful, deliberate and premeditated, the three elements necessary to establish first degree murder in Missouri. RSMo § 559.010. The Court must conclude that petitioner would not have been entitled to bail even if he had requested it. Thus, his indigency was irrelevant to this pre-trial confinement, and the King holding is inapplicable in his case. Petitioner's confinement for a non-bailable offense provides a second, alternative reason for denying petitioner relief in this action. Nonetheless, in order to ensure that petitioner has the benefit of every possible doubt, this petition will be dismissed rather than denied so that he may pursue any relief that may be available to him in the Missouri courts through a motion under Rule 27.26.

For the alternative reasons stated above, it is

ORDERED that this petition for writ of habeas corpus should be and it is hereby dismissed.