STATE of Missouri,
Plaintiff-Respondent,

v.

Laura Ann KEEVEN,
Defendant-Appellant.

No. 50418.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 31, 1987.

Motion for Rehearing and/or Transfer
Denied April 29, 1987.

Mary Elizabeth Dockery, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

The defendant, Laura Ann Keeven, was convicted by a jury of second degree murder, § 565.004 RSMo 1978,[1] and sentenced to twelve years in the custody of the Missouri Department of Corrections. The conviction stems from the shooting death of defendant's husband, Mark Keeven, who was a St. Louis County Police Officer at the time of his death. The verdict of guilty as to murder in the second degree was returned by the jury following a trial on the charge of capital murder.

Defendant's brief contains seven points on appeal. In her first point she asserts that the trial court erred in failing to suppress evidence obtained through an illegal search of her home. Secondly, she asserts that statements made by her shortly after the police responded to her 911 emergency call were admitted despite the fact that those statements were made in response to a police officer's questions and prior to the time that she was given her Miranda warnings. Defendant's third contention is that because defendant and her attorney were not apprised pursuant to their discovery request of the statements made to that officer, the trial court erred in admitting those statements. Defendant also alleges that the trial court erred in allowing the state to call Deborah Jeannette Presley because the state failed to properly respond to defendant's discovery request and waited to supply the defense with evidence concerning her whereabouts and previous statements until only four days before trial.

Defendant's fifth assertion is the trial court erred in failing to declare a mistrial after the state twice inquired of defendant's social worker at the St. Louis County Correctional Facility at Gumbo, where defendant had awaited trial, whether defendant's refusal to discuss her case indicated an attempt to hide something. Sixthly, defendant contends that the trial court erred in allowing two of defendant's former co-workers at a veterinary clinic to testify defendant did not like children and was not happy when she became pregnant. Finally, defendant contends the court erred in failing to strike a venireman for cause because his poor vision had the potential to make it difficult for him to see and understand the exhibits. We affirm defendant's conviction. We address defendant's assertions in order.

Defendant, prior to trial, moved to suppress "any and all articles, letters, notes, bedsheets [sic], pillows, pistols, and cartridges...." which the police seized in a search of defendant's home after her 911 emergency call. The trial court held an evidentiary hearing on the motion and concluded that a greeting card from defendant's sister-in-law located on the kitchen table, .357 Smith and Wesson found on the floor of the master bedroom (later identi-

---

**1.** This was the statute under which appellant was found guilty. However, that statute has since been repealed; and the new murder in the second degree statute is § 565.021 RSMo 1986 which applies to offenses committed after October 1, 1984.

fied as the murder weapon), a second revolver found in a holster on a coat rack in the bedroom, a note found in the bedroom wastebasket and the bedding and pillows from the bed on which the victim was found were all in plain view. At the same time, the court suppressed other items found in closed drawers of the bedroom, and items found in the basement and in the search of the victim's police car, which was located in the driveway of the residence.

Defendant's counsel, himself, introduced the greeting card and the note from the bedroom wastebasket. Therefore, only the propriety of the court's ruling with respect to the guns and the pillows and bedding is before this court.

■ The victim was shot in the head while on the bed in the master bedroom. Defendant, herself, called for assistance and directed officers to the master bedroom. There is no contention that the officers were not lawfully on the premises or they acted unlawfully in entering the bedroom. Where law enforcement officers are in a position where they have a lawful right to be, they clearly have the right to seize any object which has possible evidentiary value. *Thompson v. Louisiana*, 469 U.S. 17, 22, 105 S.Ct. 409, 412, 83 L.Ed.2d 246, 251 (1984); *State v. Holt*, 695 S.W.2d 474, 477 (Mo.App.1985). The trial judge listened to the evidence and concluded the gun on the floor and the gun in the holster, as well as the pillows and bedding were in the officers' plain view when they entered the bedroom. Since it was unclear which gun had been used as the murder weapon, and the victim's blood and other residue were on the pillows and bedding, all of these items had possible evidentiary value. The trial court therefore did not err in overruling defendant's motion to suppress with respect to those items of evidence.

■ Defendant's second point involves statements made by defendant to a police officer allegedly in response to questions by the police officer, prior to the time when she was given Miranda warnings. However, at the hearing on defendant's motion to suppress the statements, the evidence indicated, and the trial court found as a matter of fact, that the officer involved asked only one question. The officer's question related to how long before the officer's arrival the shooting had occurred. The officer testified the question was asked in order to determine what aid could be given to the victim. The question and the answer were suppressed by the trial court.

Defendant, however, went on to tell the officer that she had been arguing with the victim concerning her mother-in-law and her husband had been planning to leave her. She also admitted to the officer that she had shot him. Defendant was in her own kitchen at the time the statements were made. She was not advised of being in custody nor was she physically restrained. "For Miranda to be applicable, 'an individual must be both in custody and interrogated.' *State v. O'Toole*, 619 S.W.2d 804, 810 (Mo.App.1981). A statement uttered voluntarily and spontaneously is not inadmissible because *Miranda* rights were not given." *State v. Kent*, 697 S.W.2d 216, 217–218 (Mo.App.1985). We find no error.

■ Defendant next contends that the court erred in allowing the officer involved to testify concerning the statements mentioned above, because the state failed to notify defendant's counsel of those statements pursuant to a valid discovery request. The state admits defendant's counsel was not informed at the time when discovery was originally given that those statements had been made to the officer. However, the state avers the reason defendant's counsel was not informed as to those statements was because the officer did not divulge that evidence to the prosecutor until the Friday before trial. The trial court had those statements before it when it considered the question of whether the evidence should have been excluded. The trial court is vested with broad discretion in determining whether exclusion of evidence is a proper sanction in a given case for the state's failure to timely comply with a discovery request. *State v. Estes*, 631 S.W.2d 121, 122 (Mo.App.1982). *See also State v. Royal*, 610 S.W.2d 946 (Mo.

banc 1981). A finding by an appellate court that that discretion was abused is warranted only when the evidence is admitted and results in fundamental unfairness to the defendant; and the existence of fundamental unfairness is measured by whether or not the evidence or the late discovery of it was likely to have affected the outcome of the trial. *Estes* at 122.

■ Defendant never denied that she had shot her husband. Defendant's taped statement which was made at the police station after she was arrested and given Miranda warnings reaffirmed her statements to the officer at the scene, i.e., that she and her husband had been arguing over her mother-in-law prior to the shooting. Her admitted statement also acknowledged that the victim planned to leave her. The taped statement also revealed that the victim had mentioned divorce. We find the officer's testimony was therefore cumulative and no fundamental unfairness or prejudice resulted from the admission of the evidence.

■ Defendant's fourth allegation is that the trial court abused its discretion in overruling defendant's motion for sanctions with respect to the state's failure to timely disclose the whereabouts and previous statements of its witness Deborah Jeannette Presley pursuant to defendant's discovery request. The sanction sought was exclusion of her evidence. The state had timely endorsed Presley and had disclosed her whereabouts and previous statements four days before the trial. The prosecutor contended he had not known her whereabouts earlier because she had moved from Texas to Michigan and he had difficulty locating her. He offered to set up a phone interview with the witness four days before the trial, when he disclosed the requested information. That offer was refused. The issue, as in the previous point, is whether the trial court abused its discretion in failing to take the drastic step of excluding the testimony. We find no abuse of the trial court's discretion.

Presley testified defendant and the victim had fought on the night before the shooting. She also testified that the fight concerned defendant's mother-in-law. Those two facts were not disputed and on those issues, Presley's testimony was cumulative. The only other statement which Presley testified to was defendant related to her that after the fight, defendant waited until the victim went to sleep and then shot him. Certainly the fact that defendant shot her husband was cumulative and was not prejudicial.

However, the statement inferred premeditation. It is to be remembered the defendant was charged with capital murder which requires the finding of premeditation in the fatal act. She was convicted of second degree murder. One could easily presume that the jury rejected Presley's inferred premeditation statement and conclude that the statement was non-prejudicial to the defendant. We therefore deduce that the record shows no fundamental unfairness affecting the verdict resulted from the state's failure to timely comply with defendant's discovery request. We thus conclude that the trial court did not abuse its discretion in failing to exclude the testimony on that basis. *See Estes*, 631 S.W.2d at 122.

We next address the contention that the trial court erred in denying defendant's request for a mistrial after the state questioned defendant's social worker at the St. Louis County Correctional Facility at Gumbo, once on cross-examination and once on re-cross, as to whether defendant's alleged failure to discuss her case indicated that she had something to hide. The witness answered the question negatively both times and indicated that it was common for prisoners not to discuss their cases. Contrary to defendant's assertion here, the record indicates no objection on either occasion when the question was asked.

■ After the second inquiry, the court, itself, called both counsel to a sidebar conference at which it warned the prosecutor that he was "getting a little far afield." Defendant did object, however, while at the bench and asked for a mistrial because of the prosecutor's comments on defendant's exercise of her right to remain silent. The trial court correctly observed

that the objection was late. However, the court instructed the prosecutor to refrain from further inquiry along those lines and the court, on its own motion, instructed the jury to disregard the prosecutor's comments. Mistrial is a drastic remedy and should only be granted where no other remedy can prevent prejudice to defendant. *State v. Young,* 701 S.W.2d 429, 434 (Mo. banc 1985); *State v. Raspberry,* 452 S.W.2d 169, 173 (Mo.1970). Where a prosecutor has made an improper comment, it is within the discretion of the trial court to determine what form of curative relief is necessary to prevent any prejudice to the defendant. *State v. Haynes,* 455 S.W.2d 504, 505 (Mo.1970).

█ If the state makes a direct and certain reference to a defendant's failure to testify, a mistrial is mandated under the case law. *State v. Rothaus,* 530 S.W.2d 235, 237 (Mo. banc 1975); *State v. Chunn,* 657 S.W.2d 292, 294 (Mo.App.1983). Direct references are those which utilize such words as "defendant," "accused" and "testify." Indirect references are those which may have brought to the minds of some jurors that the defendant has not testified. That was the case here and the trial court can only be found to have erred if the record reflects that the trial court abused its discretion to defendant's prejudice. *Rothaus, surpa,* 530 S.W.2d at 237, quoting *State v. Tiedt,* 360 Mo. 594, 229 S.W.2d 582, 588 (1950).

In the case *sub judice,* defendant's counsel asked on direct examination whether defendant spoke to the social worker or other prisoners within the first few weeks or months after her arrival at the correctional facility. Apparently this testimony was sought to rebut state's witness Presley's testimony that defendant had spoken to her. It was defendant's counsel that first elicited testimony that defendant did not freely converse with the social worker or, to the best of the social worker's knowledge, with other prisoners.

█ The prosecutor's reference was not a direct and certain reference to defendant's failure to testify. Therefore, this court is only free to reverse the judgment and order a new trial if we can conclude from the record before us that the trial court abused its discretion in finding that its instruction to the jury was adequate to cure any prejudice from the prosecutor's questions. The trial court was in the best position to judge the possible prejudice resulting from the prosecutor's questions. *See, Rothaus, supra,* 530 S.W.2d at 238. Given the content of the questions and the answers we find no abuse of the trial court's discretion.

█ Defendant's sixth contention is the trial court erred in allowing two of her co-workers at the veterinary clinic where she worked before her son was born to testify she did not like children and had been unhappy about her pregnancy. Defendant contends that this evidence was irrelevant and therefore inadmissible. "Evidence is relevant and admissible if it tends to logically prove or disprove facts in issue, or if it corroborates other material evidence." *State v. Atkins,* 697 S.W.2d 226, 226 (Mo.App.1985). The trial court's rulings regarding the relevancy of evidence are discretionary and can only be found to be error in the face of a finding that that discretion was abused. *Id.* at 227.

The two witnesses testified about defendant's statements and reactions a year or more before the shooting. However, the state called defendant's mother-in-law who testified that defendant was angry at the victim over the pregnancy. Defendant's mother-in-law also testified that six weeks before the shooting, in a phone conversation, defendant stated "you can have your d__ son back. I hate him. I've got this kid I never wanted, and I've had my tubes tied so I'd [sic] never have another kid by your d__ son." The state also introduced testimony by one of the two co-workers that she had spoken to defendant only five days before the shooting and defendant had stated that taking care of her son was a chore. The witness testified that after defendant left the clinic she talked with her on several occasions and defendant had often indicated that her son was a chore.

The state contended at trial and contends here that the testimony concerning defend-

ant's feeling about children and about defendant's reaction to her pregnancy when tied in with other evidence was relevant to the issue of motive. Motive is not and was not at the time of defendant's trial an element of the state's case. However, the existence of motive by circumstantial evidence to support the state's case is permissible. "A wide latitude is generally allowed in the development of evidence of motive." *State v. Brown*, 360 Mo. 104, 227 S.W.2d 646, 652 (1950).

*State v. Hodge*, 655 S.W.2d 738 (Mo.App. 1983), is on point. In *Hodge* the defendant's statements made approximately one year prior to his assault on the victim were admitted in evidence because the evidence tended to demonstrate defendant's "reason for wanting to harm" the victim and other evidence indicated that his feelings had not changed toward her in the one year period. That was the case here and we find no abuse of the trial court's discretion in admitting the offered evidence. Defendant's sixth point is devoid of merit.

■ Finally, we address defendant's allegation that Venireman Wall should have been struck for cause because on voir dire he indicated he had a vision problem. Defendant contends Wall would not have been able to properly see and understand the exhibits. Wall's statement that he had a problem with his eyesight came in response to a question by the court. However, on further questioning Wall stated that he could see. It simply took him "a little bit longer than usual" to read something at a distance. Defendant's counsel at no time asked permission to inquire further of the venireman concerning his visual problems, even after the court overruled his motion to strike the venireman for cause, nor has Defendant alleged specifically how she would have been prejudiced by the fact that Venireman Wall had some trouble reading at a distance. The trial court allowed the jurors time to review the exhibits at close range.

The trial judge's determination of the qualifications of prospective jurors necessarily involves a judgment based upon personal observation of each venireman's demeanor and the nuance of his answers.... As the trial judge is in a far better position than we from a cold record to make that determination, any doubts as to the trial court's findings will be resolved in its favor.

*State v. Smith*, 655 S.W.2d 745, 474 (Mo. App.1983). *See also State v. Perry*, 684 S.W.2d 441, 445 (Mo.App.1984). On the record before us, we find no basis for a ruling that the trial court abused its discretion by not striking Venireman Wall.

The judgment is affirmed.

CRANDALL and KAROHL, JJ., concur.